IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37885-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| J.A.V., | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Juvenile J.A.V. challenges his conviction for malicious mischief in the third degree and his manifest injustice disposition. We affirm his conviction, but reverse his disposition.

## FACTS

During the late hours of June 30, J.A.V., while driving a Hummer, retrieved his friend J.B. The two intended to drive to an agriculture tunnel. Unbeknownst to J.A.V., J.B. toted an incendiary device that he fabricated from a soda bottle. J.B. wished to surprise J.A.V. and light the device inside the tunnel. J.B. believed the tunnel to be a safe place for this entertainment because of the lack of debris to catch fire. J.B. secreted the

incendiary bottle in the passenger side door.  A spray paint can lay at J.B.'s feet on the passenger's side of the Hummer.

J.A.V. stopped the Hummer outside the agricultural tunnel at the end of Bull Road, near Ellensburg.  J.B. handed J.A.V. the spray paint can.  J.A.V. walked into the tunnel, while J.B. remained inside the Hummer.  J.B. did not see the actions taken by J.A.V. inside the tunnel.  J.A.V. did not testify at trial, so we do not know the facts from his vantage point.

During the darkness of midnight, Ellensburg Police Officer Christian Alviar responded to a complaint of a Hummer being poorly driven on Bull Road outside of Ellensburg.  Officer Alviar found the Hummer near an agricultural tunnel on the south end of Bull Road.  The public could formerly drive through the tunnel and continue on Bull Road.  As Officer Alviar walked toward the Hummer, he saw a young male leave the tunnel and run toward the Hummer's open driver seat.  At trial, J.B. identified this young man as J.A.V.  Officer Alviar yelled: "'Stop, I need to talk to you.'"  Report of Proceedings (RP) at 52.  Officer Alviar then noticed a second young male curled, and with his face hidden, in the vehicle's driver seat.  This second teenager was J.B.

J.A.V. entered the Hummer and turned on the vehicle's engine.  Ellensburg Officer Christian Alviar repeated his instruction to stop.  J.A.V. revved the Hummer engine four times.  A worried Alviar called for assistance.  Alviar also shouted to the

2

driver to roll down the window. The Hummer instead left northbound on narrow Bull Road at a high rate of speed.

Officer Christian Alviar returned to his patrol car and chased the Hummer. Alviar did not catch up to the Hummer despite his traveling at 68 miles per hour. Bull Road's speed limit was 35 miles-per-hour.

Near the Aspen Grove complex, Ellensburg Officer Christian Alviar found the Hummer parked along a road. Both doors of the Hummer were open. J.B. and J.A.V. had fled. Officer Alviar found a Molotov cocktail and a blue bottle of spray paint in the vehicle. Alviar smelled gasoline in the cocktail bottle.

Officer Christian Alviar and other responding Ellensburg officers failed to locate J.A.V. and J.B., the two occupants of the Hummer. Officer Alviar returned to the agricultural tunnel near Bull Road, at where he initially saw the young man leave and run to the Hummer. Alviar saw spray paint inside the tunnel. He felt and smelled the freshness of the paint.

Officer Christian Alviar traced the Hummer's registration to a lady who Alviar knew. Officer Alviar also knew J.A.V. to be the lady's son.

J.A.V.'s criminal history prior to the agriculture tunnel excursion included juvenile convictions for felony harassment, two counts of theft in the third degree, assault in the fourth degree, and three counts of malicious mischief.

PROCEDURE

The State of Washington charged J.A.V. with possession of an incendiary device, attempting to elude a police vehicle, malicious mischief in the third degree, and taking a motor vehicle without permission in the second degree. The State did not seek, in its information, a manifest injustice disposition or plead any aggravating factors.

During trial in early October 2020, the State submitted no evidence as to the ownership of the agricultural tunnel. The State also offered no evidence of whether or not J.A.V. possessed permission to paint the tunnel.

At the close of trial, the juvenile court remarked:

> I'm going to make the following findings:
> . . . .
> [J.A.V.'s companion, J.B.] says there was a can of blue spray paint that's sitting in the car, and then when he gets in he kind of kicks it so he knows it's right there by his feet. That means it's been—it's in the vehicle before he even gets in.
> There is wet spray paint in the tunnel. The officer sees somebody running from the tunnel, get in the driver's seat—which again, it's more likely, since it's his family's vehicle, and he would have been the one that had the best access to the keys it's much more likely that—it's corroborating evidence, I think, that—[J.A.V.] is the one who was actually in the tunnel with the spray paint.
> Can is—got recent blue on it, it's been recently fired. I think it's beyond a reasonable doubt that—that [J.A.V.] wrote, painted or drew inscription, figure or mark of any type on a public or private building or structure owned by another person without express permission of the owner—Anyway, it appears there was no—no testimony about the cost of it, so it would have to be third degree. And that it happened in the state of Washington.
> So I think he's been proven guilty beyond a reasonable doubt of the malicious mischief in the third degree.

4

RP at 234, 247-48.

The juvenile court found J.A.V. guilty of malicious mischief in the third degree and guilty of taking a motor vehicle without permission in the second degree. The court found J.A.V. not guilty of possession of an incendiary device, as the State failed to prove beyond a reasonable doubt that J.A.V. knew his companion J.B. had brought the Molotov cocktail into the car. The juvenile court also found J.A.V. not guilty of attempting to elude a police vehicle.

Juvenile Probation Counselor Mayra Chavez prepared a predisposition report for J.A.V. In the report, Chavez related J.A.V.'s criminal history and failure to comply with prior disposition orders. In her conclusion, Chavez wrote:

> On October 27, 2020 it was my recommendation that [J.A.V.] remain in our community and be given one last opportunity to participate in identified services. Unfortunately, due to [J.A.V.'s] alleged crimes on the night of October 28, 2020, I'm not willing to advocate for him at this time[.] This has been a very difficult decision but due to [J.A.V.'s] ongoing actions he is a threat to the community and himself. [J.A.V.] has been working with our office since March 18, 2019 and no progress has been made. Things have progressively gotten worse to the point that [J.A.V.] has accumulated 3 points at the age of 13[.] He is pending two additional felonies currently[.] While in a secured facility, [J.A.V.] will be able to remain sober, participate consistently in school, mental health, and chemical dependency treatment.

Clerk's Papers at 44. The alleged crimes on the night of October 28 occurred after J.A.V.'s malicious mischief trial concluded on October 15, 2020.

At the disposition hearing, the juvenile court indicated it had read the predisposition report. Mayra Chavez testified and summarized J.A.V.'s criminal history prior to his malicious mischief conviction and averred that he had two felony charges pending. Chavez declared:

> It was my intention to advocate for [J.A.V.] one last time and give him the opportunity to remain in our community. But given this pending matter from October 28th I cannot advocate for him today.

RP at 263-64.

During the disposition hearing, the State mentioned J.A.V.'s earlier criminal history and that he was in pretrial detention facing two new felony charges. The prosecutor maintained that J.A.V.'s recent criminal history justified an upward manifest injustice disposition.

During the disposition hearing, the juvenile court applied two aggravating factors supporting a manifest injustice disposition: (1) J.A.V. had "a recent criminal history" and repeatedly failed to comply with conditions of a recent dispositional order and diversion agreement; and (2) J.A.V. led a criminal enterprise, which included several persons. The court based its finding of J.A.V.'s leadership on the facts that J.A.V. drove the Hummer and entered the agricultural tunnel.

During the disposition hearing, the juvenile court commented:

> Now, you have—some extremely serious matters that involve firearms, which, frankly, involve, you know, the possibility of—violent behavior.

6

But that's not before me and you haven't been found guilty of that. The only thing that I can say about that is that I have found probable cause, and that you were released on conditions from—after your trial, and—and here you are back, you know, sitting in detention again. It's just not a good sign. It's just a revolving door for you. You get out, and very soon you're sneaking out in the middle of the night—

RP at 271. The court added:

The other cause is a whole 'nother ball game. It's a whole 'nother thing. I don't know whether you'll be found guilty of it or not. And I don't know what will happen to you as a sentencing thing. But—it's a different type of charge.

RP at 272. The court imposed twenty weeks' confinement.

## LAW AND ANALYSIS

On appeal, J.A.V. contends that insufficient evidence supported his conviction for malicious mischief. He also contends that the juvenile court violated his due process rights when imposing a manifest injustice disposition.

## I. Sufficiency of Evidence

When arguing that insufficient evidence supported his conviction for malicious mischief, J.A.V. contends that no rational trier of fact could have found beyond a reasonable doubt that someone other than J.A.V. owned the agriculture tunnel or that he did not have permission to paint on it.

Due process of law commands that no man shall lose his liberty unless the government bears the burden of convincing the factfinder of his guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368

7

(1970).  The State satisfies its constitutional burden by proof beyond a reasonable doubt

of every fact necessary to constitute the crime with which the State charges the accused.

*In re Winship*, 397 U.S. 358, 364 (1970).  The reasonable doubt standard "impresses on

the trier of fact the necessity of reaching a subjective state of certitude of the facts in

issue."  *In re Winship*, 397 U.S. 358, 364 (1970).

To determine whether sufficient evidence supports a conviction, this court views

the evidence in the light most favorable to the State and determines whether any rational

fact finder could have found the elements of the crime beyond a reasonable doubt.  *State

v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014).  Following a bench trial, this court

limits its review to determining whether substantial evidence supports the findings of fact

and, if so, whether the findings support the conclusions of law.  *State v. Homan*, 181

Wn.2d 102, 105-06 (2014).  The appealing defendant necessarily admits the truth of the

State's evidence and all reasonable inferences that can be drawn from it.  *State v. Salinas*,

119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  This court defers to the trier of fact for

purposes of resolving conflicting testimony and evaluating the persuasiveness of the

evidence.  *State v. Homan*, 181 Wn.2d at 106.

RCW 9A.48.090 outlaws malicious mischief in the third degree.  The statute

provides two alternative means of conviction.  Pertinent to J.A.V.'s charge, it states:

> (1) A person is guilty of malicious mischief in the third degree if he
> or she:
> . . . .

(b) Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property *owned by any other person unless the person has obtained the express permission of the owner* or operator of the property, under circumstances not amounting to malicious mischief in the first or second degree.

RCW 9A.48.090 (emphasis added).

We note that the federal district court held RCW 9A.48.090 unconstitutional as applied to a county resident's act of writing chalk messages on sidewalk leading to the county commissioners building because the commissioners failed to apply restrictions on defacement in a viewpoint-neutral fashion. *Bledsoe v. Ferry County*, 499 F. Supp. 3d 856 (E.D. Wash. 2020). We are not bound by United States District Court's decisions and adjudge the decision inapposite to J.A.V.'s prosecution.

## A. *Owned by Any Other Person*

J.A.V. first argues that the State failed to present any evidence regarding who owned the agricultural tunnel and thus the State failed to prove an element of the offense of malicious mischief. We agree that the State did not show who owned the tunnel, but we conclude that the State proved beyond a reasonable doubt that J.A.V. did not own the tunnel. The State needed to prove only the latter fact. The statutory chapter of RCW 9A.48 defines "property of another" as "property in which the actor possesses anything less than exclusive ownership." RCW 9A.48.010(1)(c); *State v. Wooten*, 178 Wn.2d 890, 896, 312 P.3d 41 (2013). The State need not identify the titleholder of the property.

9

*Commonwealth v. Smith*, 17 Mass. App. Ct. 918, 456 N.E.2d 760, 761 (1983); *State v.*

*Bednarski*, 1 Wis. 2d 639, 85 N.W.2d 396, 398 (1957).

Even if this court might not convict on the evidence submitted by the State, we

must affirm if a rational trier of fact could find beyond a reasonable doubt that someone

other than J.A.V. owned the agricultural tunnel. Police officer testimony informed the

juvenile court that J.A.V. sprayed paint in a closed "ag tunnel" on a rural county road.

J.A.V. did not live in the vicinity of the tunnel. J.A.V. would likely not own real estate at

his age. J.A.V. and his friend drove to the site as a lark in the middle of the night. J.A.V.

fled the scene when law enforcement arrived. A reasonable trier of fact could find the

satisfaction of this element of the crime.

### B. Express Permission of the Owner or Operator

J.A.V. next argues that the State failed to prove beyond a reasonable doubt that he

lacked permission to paint the tunnel.

No court has yet considered whether the phrase "unless the person has obtained

the express permission of the owner or operator of the property" provides an element of

or defense to a charge of malicious mischief in the third degree. The parties dispute as to

whether J.A.V. or the State carries this burden. We do not decide this dispute, however,

because, even if we impose the burden on the State, the State still prevails. We reach this

same conclusion based on the facts and inferences therefrom that support the finding that

J.A.V. did not own the agricultural tunnel. A rational trier of fact could find that the

State showed beyond a reasonable doubt that J.A.V. lacked permission to spray paint the agricultural tunnel.

## II. Manifest Injustice Disposition

J.A.V. contends that, for two reasons, the juvenile court violated his due process rights by imposing a manifest injustice disposition. First, J.A.V. lacked advance notice of the prospective sentence. Second, the juvenile court relied on events that occurred after his commission of the crime of malicious mischief. J.A.V. also contends that insufficient evidence supported a finding that he led a criminal enterprise. We adopt J.A.V.'s first argument and avoid his second and third arguments.

J.A.V. received no notice, before trial, that the juvenile court might enhance his sentence by a finding that he was the leader of a criminal enterprise involving several persons. The State concedes the lack of notice, but denies that J.A.V. possessed a right to notice of a potential upward sentencing departure.

The Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, controls juvenile proceedings in Washington. RCW 13.40.150 governs disposition hearings. Under the statute, if a court concludes that disposition within the standard range would effectuate a manifest injustice, the court shall impose a disposition outside the standard range and list findings of manifest injustice supported by clear and convincing evidence. RCW 13.40.160(2). A "manifest injustice" exists when "a disposition . . . would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger

11

to society in light of the purposes of [the JJA]." A court may impose either an upward or downward departure. RCW 13.40.020(19).

RCW 13.40.150(3)(i) lists the aggravating factors that justify an upward manifest injustice disposition, although the list is not exclusive. *State v. M.S.*, 197 Wn.2d 453, 471, 484 P.3d 1231 (2021). The list includes being the leader of a criminal enterprise involving several persons. RCW 13.40.150(3)(i)(vi).

In two companion cases decided on the same day as each other, the Washington Supreme Court held in 5-4 decisions that, before pleading guilty, juveniles are entitled to notice of the facts and aggravating factors supporting manifest injustice dispositions. *State v. D.L.*, 197 Wn.2d 509, 520, 484 P.3d 448 (2021); *State v. M.S.*, 197 Wn.2d 453, 471 (2021). The court based its decisions on due process rights afforded juveniles including fundamentally fair procedures that adhere to notions of fair play. *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971); *State v. D.L.*, 197 Wn.2d 509, 514 (2021).

In *State v. D.L.*, juvenile D.L. pled guilty to a single count of first degree attempted child molestation. D.L.'s probation officer filed a memorandum supporting a manifest injustice disposition. The juvenile court imposed a manifest injustice disposition based on facts from the probation officer's memorandum that had not appeared in the initial probable cause statement. The Supreme Court considered whether fundamental fairness required entitling juveniles to notice of all facts existing at the time

of plea that could be used to support an extended sentence. Concluding that such notice was required, the Supreme Court held that the juvenile court improperly considered facts of which D.L. lacked notice at the time of his guilty plea.

In *State v. M.S.*, juvenile M.S. pled guilty to a charge of fourth degree assault and requested a deferred disposition. The deferred disposition was later revoked, and the State recommended a manifest injustice disposition above the standard range. The juvenile court imposed a manifest injustice disposition based on five aggravating factors. The Supreme Court considered the extent to which the due process clause of the Fourteenth Amendment and the JJA extended notice requirements to juvenile guilty pleas resulting in manifest injustice dispositions. The Supreme Court held, under the JJA and prior case law:

> We require notice of the facts and aggravating factors used to support a manifest injustice disposition prior to a juvenile pleading guilty. Juveniles must be given notice of all facts used to impose a manifest injustice disposition so that they have all available information to prepare to meet the allegations and properly assess their decision to proceed to trial or plead guilty. If the State fails to provide notice of aggravating factors prior to entry of the plea, manifest injustice findings are invalidated.

*State v. M.S.*, 197 Wn.2d 453, 468 (2021).

We conclude that the preplea notice requirement imposed in *State v. D.L.* and *State v. M.S.* extends to those cases involving a juvenile who pleads not guilty. Much of the Supreme Court's analyses in *D.L.* and *M.S.* suggest that the preplea notice requirement should extend to all juvenile cases. As a matter of fairness, the juvenile

13

should know before trial whether he might be sentenced to a higher disposition and the basis of the higher disposition in order to determine whether to plead guilty. Advance notice imposes little burden on the State.

The Washington Supreme Court, in *State v. D.L.*, 197 Wn.2d 509 (2021), analogized to due process case law requiring preplea notice in all adult pleas. Adults have the right to notice of all aggravating factors before they begin trial or enter a plea. RCW 9.94A.537(1); *State v. D.L.*, 197 Wn.2d 509, 515 (2021). Pretrial notice of aggravating factors is protected by due process in adult criminal proceedings. *State v. Siers*, 174 Wn.2d 269, 278, 274 P.3d 358 (2012); *State v. M.S.*, 197 Wn.2d 453, 462-63 (2021).

The Supreme Court, in *State v. M.S.* and *State v. D.L.*, also discussed the importance of a juvenile having full information available before deciding whether to plead guilty or proceed to trial.

> Notice is necessary preplea because that is the critical point at which the juvenile will consider whether to go to trial or to plead guilty; notice after the plea undermines juveniles' ability to make an informed decision because the factual basis of the ultimate disposition at the time of the plea remains unknown.

*State v. M.S.*, 197 Wn.2d 453, 465 (2021).

> In all cases, the earlier the notice, the better for the defendant, as the defendant can use this time to prepare a strategy, find witnesses, and most effectively meet the charges. But even before these actions must be taken, the notice of the specific factual allegations allows the defendant to answer the threshold question of whether to plead guilty or proceed to trial.

*State v. D.L.*, 197 Wn.2d 509, 515 (2021). If the Supreme Court worries about a juvenile's ability to *decide* whether to plead guilty or not guilty, then a juvenile should have full access to information about the potential for an upward departure at disposition regardless of the juvenile's ultimate plea decision.

The Supreme Court, in *State v. D.L.* and *State v. M.S.*, also focused on the minimal additional burden placed on the State by requiring notice prior to the entry of a plea.

> [P]rosecutors, in other contexts, are forced to choose sentencing enhancements or aggravators associated with the underlying crime prior to trial or to plea. *See State v. Recuenco*, 163 Wn.2d 428, 432-34, 437, 180 P.3d 1276 (2008). While the State will have to assert facts and aggravators initially to preserve the ability to seek a manifest injustice disposition, moving up the timeline of when the State must give this notice does not impose such a heavy burden as to outweigh the fundamental fairness of providing notice prior to the entry of a plea. Other options are available for the State to deal with misconduct occurring postplea. As occurred in this case, violations occurring after the plea can result in sanctions short of full sentencing. Additional charges may also be filed after the plea is entered.

*State v. M.S.*, 197 Wn.2d 453, 466-67 (2021). Because juveniles already hold the right to notice of facts that will support the conviction, complying with a notice requirement for an upward disposition will negligibly impact the prosecutor. *State v. D.L.*, 197 Wn.2d 509, 518-19 (2021) (citing *In re Application of Gault*, 387 U.S. 1, 33, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)).

No. 37885-3-III
*State v. J.A.V.*

CONCLUSION

We affirm J.A.V.'s conviction for malicious mischief.  We reverse the juvenile court's manifest injustice sentence and remand for a new dispositional hearing consistent with this opinion.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.

16