**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IVAN VALDEZ AMADOR,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,
*Respondent.*

No. 13-71406

Agency No.
A092-323-856

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 8, 2021
Pasadena, California

Filed March 9, 2022

Before: Susan P. Graber and John B. Owens, Circuit
Judges, and Jack Zouhary,[*] District Judge.

Opinion by Judge Zouhary;
Partial Concurrence and Partial Dissent by Judge Graber

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

**SUMMARY**[**]

**Immigration**

Denying in part and granting in part Ivan Valdez Amador's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel concluded that Valdez's conviction for domestic violence, in violation of California Penal Code § 273.5(a), rendered him removable, but remanded for the BIA to consider whether his rape conviction for felony rape of an unconscious person, in violation of California Penal Code § 261(a)(4), is an aggravated felony barring cancellation of removal.

As to removability, the panel observed that this court had already squarely rejected Valdez's argument that a Section 273.5(a) conviction is not categorically a crime of domestic violence under 8 U.S.C. § 1227(a)(2)(E)(i). The panel also rejected Valdez's argument that the government failed to prove the existence of his Section 261(a)(4) conviction, explaining that the criminal information and minute order were sufficient to establish that conviction.

As to cancellation of removal, the panel explained that rape under Section 261(a)(4) occurs when the victim "is at the time unconscious of the nature of the act, and this is known to the accused," and the phrase "unconscious of the nature of the act" means the victim was incapable of resisting because the victim fell within one of the statute's subsections. Subsection D involves a victim who was not "aware, knowing, perceiving, or cognizant of the essential

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose."

In its 2013 decision in this case, the BIA noted that—at the time—it was undisputed that Section 261(a)(4) was not a categorical aggravated felony. Applying the modified categorical approach, the BIA then concluded that Valdez did not plead guilty under subsection (D), the only provision that would not have been a rape aggravated felony. However, the panel concluded that, in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), Section 261(a)(4) is now indivisible. The panel explained that the subsections of Section 261(a)(4) are "means" that render the statute indivisible because the jury need not specify under which circumstances a victim is rendered "unconscious of the nature of the act." The parties agreed on this point, but disagreed as to whether the statute is a categorical aggravated felony or, alternatively, an "overbroad" statute.

Applying the categorical approach, the panel considered Valdez's argument that subsection (D) falls outside the generic federal definition of rape. The panel noted that the BIA had asked the parties to brief the issue and concluded that the generic federal definition of rape did not encompass sexual intercourse involving deceit. However, the panel concluded that there were now two potential problems with the BIA's analysis: 1) because Section 261(a)(4) was clearly divisible at that time, the government did not advance the argument that the statute was categorically an aggravated felony, and the BIA had no reason to examine the issue thoroughly; 2) California law had changed significantly in the past decade.

The panel observed that the court owes deference to the BIA on the question whether the generic definition of rape includes consensual intercourse obtained through fraud. However, because this issue was not argued before the BIA, and in light of new developments in case law, the panel remanded for the BIA to have an opportunity to carefully consider the question.

Concurring in part and dissenting in part, Judge Graber agreed with the majority opinion as to removability, but disagreed as to cancellation of removal. Because the BIA already held—in a reasoned, persuasive decision—that Section 261(a)(4) is not a categorical match for the federal definition of an aggravated felony, Judge Graber would uphold the BIA's decision in that regard; hold that Petitioner is statutorily eligible for cancellation; grant the petition; and remand for the BIA's discretionary decision whether to grant cancellation. Judge Graber wrote that the majority opinion's decision to remand for the BIA to reconsider its categorical analysis was relief sought by no party, found no support in the facts or the law, and needlessly prolonged already protracted litigation.

Judge Graber observed that this case provided yet another example of the substantive and procedural mess caused in immigration cases by the categorical approach and the modified categorical approach. Judge Graber wrote that, even if only a legislative act could dissolve the categorical approach in toto, the Supreme Court could alleviate part of the problem by permitting a more practical inquiry under the modified categorical approach. Thus, Judge Graber respectfully encouraged the Court to reconsider its decision in *Mathis* in an appropriate case.

**COUNSEL**

Mario Acosta Jr. (argued), Law Office of Mario Acosta Jr., Santa Fe Springs, California, for Petitioner.

Rebecca Hoffberg Phillips (argued), Trial Attorney; John S. Hogan, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

ZOUHARY, District Judge:

Petitioner Ivan Valdez Amador ("Valdez"), a native and citizen of Mexico, was ordered removed after an Immigration Judge ("IJ") determined that he was removable due to his conviction for domestic violence and ineligible for cancellation of removal due to his conviction for rape of an unconscious person. After remanding the case to the IJ three times, the Board of Immigration Appeals ("BIA") determined in 2013 that Valdez's criminal convictions rendered him removable and ineligible for cancellation of removal. Valdez then petitioned for review of the BIA decision. This Court has jurisdiction under 8 U.S.C. § 1252(a).

**FACTUAL AND PROCEDURAL BACKGROUND**

Valdez was admitted as a legal permanent resident in 1989 at age nine. In 2005, he was convicted in state court of "inflicting corporal injury on a spouse or cohabitant," in violation of California Penal Code § 273.5(a), and of driving under the influence of alcohol. He was sentenced to 150 days incarceration. Later that year, Valdez was

convicted of violating a protective order and sentenced to 20 days incarceration.

In 2010, Valdez was convicted in the same state court for "felony rape of an unconscious person" in violation of California Penal Code § 261(a)(4). He was sentenced to one year in prison, five years of probation, and ordered to register as a sex offender. Weeks later, the federal government served Valdez with a notice to appear, alleging he was removable due to his status as an aggravated felon. In 2011, Valdez appeared with counsel before an IJ. He admitted that he had been convicted of rape of an unconscious person, but argued that the crime did not constitute an aggravated felony. The government then lodged two more removal charges: one for being convicted of a crime involving domestic violence (Section 273.5(a)), and another for being convicted of two "crimes involving moral turpitude" ("CIMT"). The IJ concluded that Valdez's actual conduct in committing the crime of "rape of an unconscious person" fit the common law definition of rape, rendering Valdez an "aggravated felon" who is both removable and ineligible for cancellation of removal.

Valdez appealed to the BIA, arguing: (1) Section 261(a)(4) is "divisible" because two subsections of the statute involve the use of fraud to obtain sex; (2) the IJ improperly relied on the criminal complaint to determine which subsection of the statute he was convicted under; (3) the electronic conviction records were not properly authenticated; and (4) Section 273.5(a) is not categorically a crime of domestic violence or a CIMT because the statute criminalizes violence against a person who is not in a protected relationship.

The BIA found that, in light of *Banuelos-Ayon v. Holder*, 611 F.3d 1080 (9th Cir. 2010), the conviction documents

underlying the Section 273.5(a) conviction were sufficient to demonstrate removability.  But the BIA remanded to the IJ for reconsideration of cancellation of removal.  In particular, the IJ considered whether a violation of Section 261(a)(4) was categorically a "rape" offense under 8 U.S.C. § 1101(a)(43)(A).  The IJ ruled that the Section 261(a)(4) conviction categorically constituted an aggravated felony.

Back to the BIA once again.  This time, Valdez pointed to intervening case law holding that a violation of Section 273.5(a) was not a categorical CIMT, and he argued that it was similarly not a crime of domestic violence.  The BIA rejected that argument and again found Valdez removable due to the Section 273.5(a) conviction.  However, the BIA held that Section 261(a)(4) encompassed "some conduct that is commonly understood as rape" and "some conduct that is not," namely "sexual intercourse with a victim who consented due to fraud."  So, in 2012, the BIA again remanded to the IJ to determine whether Valdez could demonstrate eligibility for cancellation of removal.

On remand, the IJ disagreed.  The IJ certified the record back to the BIA for "reconsideration," arguing the decision was inconsistent with "binding precedential authority," specifically, *Castro-Baez v. Reno*, 217 F.3d 1057 (9th Cir. 2000).  *Castro-Baez* held that rape under Section 261(a)(3), involving a victim who is "prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance," is categorically an aggravated felony.  217 F.3d at 1059.  The BIA was unmoved and noted that *Castro-Baez* was inapposite because it dealt with a statute that "require[d] absence of consent as an element."  The BIA declined the request for certification and again remanded—this time to a different IJ.

Before the new IJ, the government presented transcripts from the preliminary hearing and guilty-plea hearing outlining the factual basis of Valdez's guilty plea under Section 261(a)(4). The IJ held that the conviction documents made clear Valdez was not convicted under the fraudulent-representation subsection of the statute—the only portion of the statute that would not be an aggravated felony. Valdez appealed again, arguing the preliminary-hearing transcript was insufficient to demonstrate under which subsection of Section 261(a)(4) he pled guilty and that Section 273.5(a) was a divisible statute.

In April 2013, the BIA dismissed Valdez's appeal for three reasons. First, the BIA again noted that Valdez was removable for his Section 273.5(a) conviction and that he had waived any argument to the contrary. Second, Valdez was not eligible for cancellation of removal because, applying the modified categorical approach, the conviction documents demonstrated that he did not plead guilty under the fraudulent-representation provision of Section 261(a)(4), and he therefore failed to establish that he was not an aggravated felon. Finally, the BIA noted that Valdez waived any other claims to asylum, withholding of removal, protection under the Convention Against Torture, adjustment of status, or voluntary departure.

Valdez then petitioned this Court for review. In 2013, a motions panel denied Valdez's motion for a stay of removal, as well as the government's motion for summary disposition. Valdez's case was stayed pending resolution of several cases, including *Almanza-Arenas v. Lynch*, 815 F.3d 469 (9th Cir. 2016) (en banc), and *Mathis v. United States*, 136 S. Ct. 2243 (2016). This Court then sought briefing on possible remand, after *Pereida v. Wilkinson*, 141 S. Ct. 754, 761–63 (2021), held that, where a statute is divisible,

petitioners are "obliged to show" they were convicted under the statute's non-aggravated-felony provision in order to demonstrate eligibility for cancellation of removal. Both parties agreed a remand was unnecessary, as this case turns on statutory interpretation, not the record of conviction.

Valdez presents a two-fold challenge to the BIA decision. He argues: (1) his conviction under Section 273.5(a) is not a removable offense; and (2) he is eligible for cancellation of removal because Section 261(a)(4) is not a categorical aggravated felony. We address each argument below.

## LEGAL STANDARD

We review de novo the BIA's conclusions that Valdez is removable and ineligible for discretionary relief. *See Carrillo v. Holder*, 781 F.3d 1155, 1157 (9th Cir. 2015); *Coronado v. Holder*, 759 F.3d 977, 982 (9th Cir. 2014). In doing so, we review de novo whether a state conviction is an aggravated felony, *Jauregui-Cardenas v. Barr*, 946 F.3d 1116, 1118 (9th Cir. 2020), and employ the categorical and modified categorical approaches. *Syed v. Barr*, 969 F.3d 1012, 1017 (9th Cir. 2020). Under either approach, we "ask whether the statutory elements of the crime of conviction match the elements of the generic offense." *Id.*

## DISCUSSION

### Valdez is removable for his domestic-violence conviction.

Under 8 U.S.C. § 1227 (a)(2)(E)(i), a person is removable if convicted of any "crime of domestic violence." Valdez argues that, "because [Section 273.5(a)] punishes injury committed on a co-habitant, and this may involve one

with whom the defendant has no special 'domestic' relationship with," it is not categorically a crime of domestic violence. He points to *Morales-Garcia v. Holder*, 567 F.3d 1058, 1060 (9th Cir. 2009), which held that a violation of Section 273.5(a) is not categorically a CIMT. But we have squarely rejected that argument:

> [W]e do not overlook *Morales-Garcia* [], which decided that § 273.5 is not categorically a CIMT. That case is simply inapposite to the issue before us. It did not, and could not, decide whether § 273.5 was a crime of domestic violence; it simply decided whether it was a CIMT. Perhaps a conviction under § 273.5 will sometimes be a CIMT; perhaps it will sometimes be an aggravated felony; *but it categorically is a crime of domestic violence.*

*Carrillo*, 781 F.3d at 1159–60 (emphasis added).

Valdez makes a second argument—that the IJ relied on improper conviction documents, and therefore the government "failed to prove the existence of this conviction." Before the IJ, the government produced the criminal information and the minute order from Valdez's sentencing. Count 4 of the information charged Valdez with "the crime of INFLICTING CORPORAL INJURY UPON A SPOUSE OR COHABITANT, in violation of [Section] 273.5(A)" by "willfully and unlawfully inflict[ing] corporal injury resulting in a traumatic condition upon [] THE MOTHER OF [HIS] CHILD/CHILDREN." The Minute Order from Valdez's sentencing then notes that he was "sentenced pursuant to plea bargain" for "004 PC273.5(A)." As the BIA noted, "[t]he certification stamps appearing on

the [] conviction records are dated and signed by the court's Executive Officer, and are supplemented by a signed attestation of the receiving [government] officer." These documents are sufficient to establish Valdez's Section 273.5(a) conviction. *See Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1195–97 (9th Cir. 2006) (admitting copies of criminal convictions that were stamped by an immigration agent and appeared to be official state-court records even where certification by a state official was lacking).

A final point. The BIA and the government note that, before the IJ, counsel for Valdez conceded that the Section 273.5(a) conviction rendered Valdez removable:

> Q: So let me just make sure that I'm understanding the posture of the case. We're still at the removal stage or we're at the cancellation – in other words, has removability been established already or is that still at issue?
>
> A: Removability has been established. The [IJ] initially found [Valdez's] 273.5 conviction was a crime of domestic violence . . . so that's the charge that's been sustained. The charge that has not been sustained, that the [BIA] has remanded . . . is the aggravated felony charge[.]
>
> *    *    *
>
> Q: So there's a lodged charge here somewhere?

A: . . . Yes, there is an I-261, Judge, that was
filed in Court . . . .  And that's the one that
added the 237(a)(2)(E) charge.

\*    \*    \*

Q: All right.  So both of you agree that
removability has been established with
regard to the lodged charge?

A: Yes.

Valdez argues this colloquy was in no way a concession,
but we disagree.  He also admitted to the conviction in his
motion for bond before the IJ.  The record—and the law—
are clear:  Valdez was convicted of a crime of domestic
violence under Section 273.5(a).

**Valdez may be ineligible for cancellation of removal
due to his Section 261(a)(4) conviction.**

Valdez bears the burden of demonstrating he is eligible
for discretionary relief from removal.  *Marinelarena v.
Garland*, 6 F.4th 975, 977–78 (9th Cir. 2021).  To do so, he
must show that he: "(i) satisfies the applicable eligibility
requirements; and (ii) with respect to any form of relief that
is granted in the exercise of discretion, that [he] merits a
favorable   exercise   of   discretion."      8   U.S.C.
§ 1229a(c)(4)(A).  To meet the first requirement, he must
show that he is not an aggravated felon.   8 U.S.C.
§ 1229b(a)(3).  A noncitizen convicted of an "aggravated
felony" is not only deportable, but also ineligible for
discretionary relief. *Moncrieffe v. Holder*, 569 U.S. 184, 187
(2013) (citing 8 U.S.C. § 1227(a)(2)(A)(iii)).   The term
"aggravated felony" includes "murder, rape, or sexual abuse
of a minor."  8 U.S.C. § 1101(a)(43)(A).

In its final order dismissing Valdez's appeal, the BIA noted that—at the time—it was undisputed Section 261(a)(4) was not a categorical aggravated felony because "the offense encompasses some conduct that is commonly understood as rape as well as conduct that is not."  The BIA then applied the modified categorical approach and—based on the transcripts of Valdez's preliminary hearing and guilty-plea hearing—upheld the IJ's determination that Valdez did not plead guilty under subsection (D), the only provision of Section 261(a)(4) that would not have been an aggravated felony.

In the interim, *Mathis* held that if a statute lists "various factual means of committing a single element," it is "indivisible," and the modified categorical approach is therefore inapplicable.  136 S. Ct. at 2249.  Unlike elements, "means" are "[h]ow a given defendant actually perpetrated the crime—what we have referred to as the 'underlying brute facts or means' of commission."  *Id.* at 2251 (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999)). Unless "a jury must unanimously agree on which of the . . . statutory alternatives a defendant committed to return a conviction," the alternatives are "means."  *United States v. Robinson*, 869 F.3d 933, 938 (9th Cir. 2017).  Here, the subsections of Section 261(a)(4) are "means" because the jury need not specify under which circumstances a victim must be rendered "unconscious of the nature of the act." Section 261(a)(4) is therefore "indivisible," and the BIA— through no fault of its own—erred in applying the modified categorical approach.  Valdez and the government correctly agree on this point.  They disagree, however, as to whether Section 261(a)(4) is a categorical aggravated felony or, alternatively, an "overbroad" statute.

Because the statute is now "indivisible," we cannot look to the underlying facts to determine which subsection Valdez violated. We must take the statute as a whole: "Our decisions authorize review of the plea colloquy or other approved extra-statutory documents only when a statute defines [the state crime] not (as here) overbroadly, but instead alternatively, with one statutory phrase corresponding to the generic crime and another not." *Descamps v. United States*, 570 U.S. 254, 265 (2013). The full range of conduct covered by Section 261(a)(4) must fit the generic definition of "rape," otherwise it is "too-broad." *Mathis*, 136 S. Ct. at 2254. If the statute is overbroad, Valdez may be eligible for discretionary relief from removal.

To make this determination, we apply the categorical approach, in which we examine "whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Moncrieffe*, 569 U.S. at 190 (internal quotation marks and citation omitted). To be a categorical match, the offense must "necessarily involve[] . . . facts equating to [the] generic [federal offense]." *Shepard v. United States*, 544 U.S. 13, 24 (2005) (quotation marks omitted). We assume the conviction "rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe*, 569 U.S. at 190–91 (cleaned up).

Step one. We must establish what conduct is covered by the state statute. California law defines rape as "'an act of sexual intercourse accomplished with a person not the spouse of the perpetrator,' under any of seven specifically enumerated circumstances." *Castro-Baez*, 217 F.3d at 1059 (citing Section 261(a)(1)–(7)). Valdez pled no contest to a violation of Section 261(a)(4), which occurs when the victim

"is at the time unconscious of the nature of the act, and this is known to the accused." The phrase "unconscious of the nature of the act" means the victim was incapable of resisting because the victim:

> (A) Was unconscious or asleep.
>
> (B) Was not aware, knowing, perceiving, or cognizant that the act occurred.
>
> (C) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact.
>
> (D) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose.

*Id.*

Step two. We next determine the generic federal definition of "rape." Valdez argues that subsection (D) ("fraudulent representation") falls outside the generic federal definition of rape. This question has been raised previously. In 2012, the BIA directed the parties to brief whether the generic federal definition of rape also encompasses sexual intercourse involving deceit. The BIA then answered that question in the negative, noting:

> In 1996, when Congress added "rape" to the list of aggravated felonies, only 23 of 50 states continued to use the term "rape" to define offenses in their criminal codes; and of

those 23 states, only 4 expressly denominated sexual intercourse by fraud or deception as a form of "rape." Under the Model Penal Code, moreover, sexual intercourse by deception is classified as "gross sexual imposition," while the label "rape" is reserved for offenses in which non-consent is clearly established, such as where the victim is subjected to sexual intercourse by force or while unconscious or drugged.

(citations omitted). But there are now two potential problems with this analysis.

First, as explained above, *Mathis* held that the modified categorical approach no longer applies to statutes like Section 261(a)(4). That case was not decided until 2016. Prior to *Mathis*, Section 261(a)(4) was clearly divisible, and therefore the government had no reason to assert that the statute's fraudulent-representation provision fit the federal definition of rape—"unlawful sexual activity . . . with a person . . . without consent and [usually] by force or threat of injury." *United States v. Yanez-Saucedo*, 295 F.3d 991, 996 (9th Cir. 2002) (ellipses in original) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)). Simply put, the statute did not have to be a categorical aggravated felony in order for Valdez to be ineligible for cancellation of removal. For this reason, the government did not advance the argument, and the BIA had no reason to examine the issue thoroughly.

Second, California law has changed significantly in the past decade. Previously, intercourse involving consent obtained through fraud was not considered rape. *See, e.g.*, *People v. Stuedemann*, 67 Cal. Rptr. 3d 13, 16 (Ct. App. 2007) ("When lack of consent is a necessary element of a crime, the fact the defendant employed fraudulent

misrepresentations to induce the victim to consent to the proscribed act ordinarily does not vitiate the consent to supply the required element of nonconsent."). But the California legislature amended the state's sex crimes laws "to expand the circumstances under which a defendant may be prosecuted for fraudulently inducing a victim to consent to sexual conduct." *People v. Pham*, 103 Cal. Rptr. 3d 366, 370 (Ct. App. 2009).

After briefing in this case concluded, the California Supreme Court addressed the consent issue head-on in *People v. Robinson*, 370 P.3d 1043 (Cal. 2016). "In the sexual assault context, it is settled that 'without the victim's consent' has the same meaning as 'against the victim's will.'" *Id.* at 1047–48 (internal quotation marks and citation omitted). In evaluating "whether a touching is without consent when the victim is 'unconscious' of its sexual nature," *Robinson* held that "[i]t is apparent from the history of [the sexual-assault statute] that the Legislature indeed intended the statute to establish that misrepresentation of professional purpose may negate a victim's consent." *Id.* at 1048.

Relying on *Robinson*, a California appellate court outlined why a victim who is "unconscious of the nature of the act," including through fraudulent representation under subsection (D), cannot consent:

> In 2016, the Supreme Court held that the new law reflected the Legislature's intent that . . . fraud in the inducement would henceforth be deemed to vitiate consent. Section 261.6, which defines "consent" for purposes of [Section 261], specifies that the term means "positive cooperation in act or attitude pursuant to an exercise of free will." The

> person must act freely and voluntarily and *have knowledge of the nature of the act* or transaction involved. The term "unconscious of the nature of the act," as used in the statute[] . . . is based on this understanding of the consent requirement. Thus, the Legislature has refined the consent requirements for sex crimes to include not only the ordinary circumstance where consent is never given, but also more complicated circumstances where it is obtained through deceit.

*People v. Icke*, 214 Cal. Rptr. 3d 755, 761–62 (Ct. App. 2017) (cleaned up). Thus, under California law, "a victim's unawareness of the nature of a sexual act is the *equivalent* of the victim's lack of consent." *Id.* at 762 (citing *Robinson*, 370 P.3d at 1048–49) (emphasis in original).

Does the generic federal definition of rape include consensual intercourse obtained through fraud? This is a question to which we owe deference to the BIA. *See Yim v. Barr*, 972 F.3d 1069, 1077 (9th Cir. 2020). Because this issue has not been argued before the BIA, and in light of new developments in case law over the last decade, it is appropriate for the BIA to have an opportunity to carefully consider the question. This is the exact relief sought by the government at argument. We share the dissent's frustration with both the categorical approach and the lengthy procedural history of this case, but those concerns do not control the outcome.

## CONCLUSION

The BIA correctly determined Valdez is removable due to his domestic-violence conviction. Whether he is eligible

for cancellation of removal is not so clear.  We therefore deny the petition in part, grant the petition in part, and remand to the BIA to consider whether the generic federal definition of rape includes intercourse involving consent obtained through fraud.  In light of this opinion, the Motion to Remand (Doc. 61) is denied as moot.  The parties shall bear their own costs on appeal.

**PETITION FOR REVIEW DENIED IN PART AND GRANTED IN PART; REMANDED.**

---

GRABER, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority opinion that the Board of Immigration Appeals ("BIA") correctly held that Petitioner is removable.  Op. at 9–12.  I therefore concur in part.

But I respectfully disagree with the majority opinion's analysis of Petitioner's statutory eligibility for cancellation of removal.  Op. at 12–18.  Because the BIA already held— in a reasoned, persuasive decision—that California Penal Code section 261(a)(4) is *not* a categorical match for the federal definition of an aggravated felony, I would uphold the BIA's decision in that regard; hold that Petitioner is statutorily eligible for cancellation of removal; grant the petition; and remand for the BIA's discretionary decision whether to grant cancellation of removal.  The majority opinion's decision to remand for the BIA to reconsider its categorical analysis is relief sought by no party, finds no support in the facts or the law, and needlessly prolongs already protracted litigation.  I therefore dissent in part.

A. *Cancellation of Removal*

To be eligible for cancellation of removal, Petitioner must prove that he has not been convicted of an "aggravated felony." 8 U.S.C. §§ 1229a(c)(4)(A)(i), 1229b(a)(3). Petitioner was convicted of rape, in violation of California Penal Code section 261(a)(4). The BIA held that section 261(a)(4) is not a categorical match because some conduct criminalized by section 261(a)(4) lies outside the generic federal definition of "rape," an aggravated felony. In particular, section 261(a)(4) encompasses sexual intercourse obtained by fraud in the inducement: when the perpetrator "fraudulent[ly] represent[ed] that the sexual penetration served a professional purpose when it served no professional purpose," Cal. Penal Code § 261(a)(4)(D). But the federal definition of rape does *not* encompass sexual intercourse obtained by fraud in the inducement. So there is no categorical match.

The BIA further held that, applying the modified categorical approach and looking to the specifics of Petitioner's conviction, Petitioner had been convicted of a version of rape that fits within the federal definition. He had not committed rape by fraud in the inducement. Accordingly, the BIA held that Petitioner is statutorily ineligible for cancellation of removal.

As the majority opinion cogently explains, and as all parties now agree, the BIA erred by applying the modified categorical approach. Op. at 13. Under *Mathis v. United States*, 136 S. Ct. 2243 (2016), California Penal Code section 261(a)(4) is not "divisible." We therefore may not look to the specifics of Petitioner's conviction, no matter how clear it is that he did not commit rape by fraud in the inducement.

That should be the end of our analysis. I would grant the petition and remand for the BIA to consider whether Petitioner merits a favorable exercise of discretion.

The government nevertheless asks us to deny the petition, asserting that section 261(a)(4) is a *categorical* match for the federal definition.

The government's argument is remarkable procedurally. The BIA ordered supplemental briefing on that specific question, and the government responded by arguing—at length and in detail—that section 261(a)(4) is *not* a categorical match. The BIA did not merely accept the government's concession. Instead, the BIA provided its own detailed, persuasive reasoning. Several additional rounds of proceedings ensued before immigration judges and the BIA, and the government not once argued to the contrary. Indeed, in its final decision, the BIA noted that it was "undisputed" that section 261(a)(4) is not a categorical match. In sum, during the extensive proceedings conducted by the agency—spanning four decisions by three different immigration judges and four decisions by the BIA—the government never argued that a categorical match existed. To the contrary, the government expressly conceded, in reasoned analysis, that there is no categorical fit. The majority opinion properly holds Petitioner to his own concession of removability, Op. at 11–12, but declines to apply the same standard to the government's clear concession as to the categorical analysis.

Even were we to reach the merits of the issue, the BIA's detailed reasoning is fully persuasive:

> In 1996, when Congress added "rape" to the list of aggravated felonies, only 23 of 50 states continued to use the term "rape" to

define offenses in their criminal codes,[footnote 2] *see Perez-Gonzalez v. Holder*, 667 F.3d 622, 627 (5th Cir. 2012); and of those 23 states, only 4 expressly denominated sexual intercourse by fraud or deception as a form of "rape."[footnote 3] Under the Model Penal Code, moreover, sexual intercourse by deception is classified as "gross sexual imposition," while the label "rape" is reserved for offenses in which non-consent is clearly established, such as where the victim is subjected to sexual intercourse by force or while unconscious or drugged. *See* Model Penal Code § 213.1.

In light of the foregoing, we conclude that when Congress added "rape" to the list of aggravated felonies, the generic meaning of that term did not encompass acts of *consensual* sexual intercourse committed through fraud or deception. *Cf. also Perez Gonzalez v. Holder*, *supra* (similarly holding that, because only a small fraction of states "considered digital penetration to be rape" at the time rape was added to the Act as an aggravated felony, digital penetration is not covered by the rape provision). Thus, we hold that Cal. Penal Code § 261(a)(4) does not define a categorical "rape" aggravated felony. . . . [California Penal Code section 261(a)(4)] encompasses some conduct that is commonly understood as rape (e.g., sexual intercourse with a non-consenting victim) as well as some conduct that is not (e.g., sexual

intercourse with a victim who consented due to fraud).[footnote 4]

[Footnote 2:] *See* Ala. Code. §§ 13A-6-61 and 62; Ark. Code Ann. § 5-14-103; Cal. Penal Code § 261; Ga. Code Ann. § 16-6-1; Idaho Code § 18-6101; Ind. Code § 35-42-4-1; Kan. Stat. Ann. § 21-3502; Ky. Rev. Stat. Ann. §§ 510.040, 510.050, 510.060; La. Rev. Stat. Ann. § 14:41; Md. Ann. Code, art. 27, §§ 462 and 463 (repealed in 2002 and replaced with Md. Code Ann., Criminal Law § 3-303); Mass. Gen. Laws ch. 265 § 22; Mo. Rev. Stat. § 566.030; N.Y. Penal Law §§ 130.25, 130.30, 130.35; N.C. Gen. Stat. §§ 14-27.2 and 14-27.3; Ohio Rev. Code Ann. § 2907.02; Okla. Stat. tit. 21, §§ 1111 and 1111.1; Or. Rev. Stat. §§ 163.355, 163.365 and 163.375; 18 Pa. Cons. Stat. § 3121; S.D. Codified Laws § 22-22-1; Tenn. Code Ann. § 39-13-502; Utah Code Ann. § 76-5-402; Va. Code Ann. § 18.2-61; Wash. Rev. Code § 9A.44.040. By 1996, the federal government, the District of Columbia, and the remaining 27 states had abandoned use of the term rape to define offenses in their criminal codes.

[Footnote 3:] Cal. Penal Code § 261(a)(4); Idaho Code § 18-6101(6); 21 Okla. Stat. § 1111(5)–(6); Tenn. Stat. § 39-13-503(a)(4). It is possible, however, that some other states may have recognized the concept of "rape by fraud" through case law.

[Footnote 4:]   We reach our conclusion reluctantly in light of the disturbing and abhorrent nature of the offense at issue here and in Perez-Gonzales, supra, but we are bound to follow the statute as enacted by Congress.

We defer to the BIA's determination that a state crime fits within the federal definition.  *Yim v. Barr*, 972 F.3d 1069, 1077 (9th Cir. 2020).  But even under de novo review, the BIA's reasoning is fully convincing.  Only a very small number of jurisdictions defined "rape" to include fraud in the inducement, and the Model Penal Code excluded fraud in the inducement from its definition of "rape."

The majority opinion does not engage with the BIA's reasoning.  Instead, it provides relief sought by neither party: it remands to the BIA for its reconsideration of the categorical approach, asserting that the BIA has not "examine[d]" "thoroughly" or "carefully consider[ed]" the issue.  Op. at 16, 18.  The majority opinion justifies its decision on two grounds.

First, the majority opinion asserts that the BIA had no reason to examine the categorical approach thoroughly because the government relied on the modified categorical approach and therefore "did not advance the argument" that there was a categorical match. Op. at 16.  That assertion has no support in the record; to the contrary, the record refutes that post-hoc justification.  The BIA ordered supplemental briefing on both the categorical and modified categorical approaches.  In response, the government wrote seven detailed pages explaining why there was no categorical match.  And the BIA did not just accept the parties' agreement that there was no categorical match; it provided

detailed, specific, definitive, and persuasive reasoning on the issue, quoted above.

Nor can it be said that the government and the BIA merely agreed on the categorical question because the modified categorical approach provided a clear answer. At the time, the answer to the modified categorical question was decidedly unclear. The BIA earlier had concluded that the record was insufficient under the modified categorical approach. Moreover, the BIA ultimately concluded that Petitioner's conviction qualified under the modified categorical approach only after two additional hearings before an IJ, another round of briefing, introduction of new evidence, two more decisions by an IJ, and one intervening decision by the BIA in which it reaffirmed its earlier reasoning on the categorical question.

In sum, the BIA fully and carefully considered the categorical question. The majority opinion provides no record citation for its assertion to the contrary, nor can it. Neither does the majority opinion cite any precedent justifying a remand for reconsideration in these circumstances, nor can it.

The majority opinion's second reason for reopening the categorical inquiry fares no better. Citing two intervening decisions by the California courts, the majority opinion asserts that California law "has changed significantly in the past decade." Op. at 16–18 (citing *People v. Robinson*, 370 P.3d 1043 (Cal. 2016), and *People v. Icke*, 214 Cal. Rptr. 3d 755 (Ct. App. 2017)). The majority opinion is mistaken. California law has not changed in any pertinent respect.

In 2012, as now, California Penal Code section 261(a)(4) criminalized sexual intercourse if the victim "is at the time unconscious of the nature of the act." The statute further

stated, and still states, that, "[a]s used in this paragraph, 'unconscious of the nature of the act' means incapable of resisting because the victim . . . (D) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose." *Id.* Also then, as now, California law provided, and provides, that, "[i]n prosecutions under Section 261 . . . in which consent is at issue, 'consent' means positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and *have knowledge of the nature of the act* or transaction involved." Cal. Penal Code § 261.6(a) (emphasis added). In sum, for purposes of California law, rape obtained by fraud in the inducement means that the victim was "unconscious of the nature of the act" which means, in turn, that the victim did not "consent" as defined by California law.

The intervening California decisions cited by the majority opinion merely describe that background statutory law. The decisions do not announce a new principle or overrule relevant precedent. There has been no relevant change whatsoever in California law since the BIA issued the relevant decision. Moreover, California's statutory definition of "consent" is irrelevant to the BIA's cogent reasoning: when Congress enacted its definition of aggravated felony, only a small number of jurisdictions defined rape to encompass fraud in the inducement. Accordingly, the federal definition of rape does not encompass fraud in the inducement, no matter what words the State uses or how the State defines the statutory terms. The only relevant change in California law occurred in 2002 when, as the BIA correctly recognized in its opinion a decade later, the California legislature expanded the

definition of "rape" beyond the generic definition to encompass rape obtained by fraud in the inducement.

In sum, the BIA correctly held that section 261(a)(4) is not a categorical match for the federal generic definition of "rape." Because the BIA fully considered that issue already, and because there has been no intervening change in law, I dissent from the majority opinion's decision to remand to the BIA for yet another decision on the identical question. I would remand for the BIA to determine whether Petitioner warrants a favorable exercise of discretion.

### B. *Comments on the Categorical Morass*

1.  Many others, and I, have commented on the absurdity of the categorical approach and its cousin, the modified categorical approach. *See, e.g.*, *Alfred v. Garland*, 13 F.4th 980, 987 & n.1 (9th Cir. 2021) (England, J., concurring, joined by Bybee, J.) (collecting a subset of separate statements by jurists, including one of mine). This case provides yet another example of both the substantive and procedural mess that the approach causes.

On the substance: Only in a hyper-technical, theoretical world does it make any sense to conclude that Petitioner is not an aggravated felon. Nothing in the record suggests that Petitioner used a devious professional purpose to lure his victim. To the contrary, as the IJ put it, it is "obvious" from the record that Petitioner was convicted for a rape as traditionally understood; it is "clear" that he did not use fraud in the inducement. Whatever justification might exist in the criminal context for declining to allow a factfinder to determine the nature of a previous conviction, no such justification exists in the immigration context. More to the point, I find it implausible, to put it mildly, that Congress intended the unpalatable result in this case: Petitioner has

affirmatively established eligibility for cancellation of removal because, contrary to all indications in the record, he theoretically could have induced his victim using a professional purpose.

On the procedure:  Trying to apply the categorical and modified categorical approaches is a never-ending whirlwind of proceedings, reconsiderations, disagreements by reasonable jurists, and changing legal landscapes.  This case presents a single legal question about a single conviction, yet it has spawned, over eleven years and counting:  four decisions by the BIA, four decisions by three different immigration judges, approximately six rounds of briefing, and a split opinion by this court.  And, of course, the majority opinion concludes that we need at least one more decision by the BIA, which will almost certainly entail another round of briefing plus, if Petitioner loses, likely another petition for review before this court.  Yet again, I find it implausible that Congress intended inquiries into statutory eligibility for cancellation of removal to require such an extended process for a run-of-the-mill question about a single conviction.

2.  Some have suggested that, because Congress created the categorical approach, only Congress can fix the problem.  *E.g.*, *Descamps v. United States*, 570 U.S. 254, 278–79 (2013) (Kennedy, J., concurring).  As just noted, I question whether Congress actually intended courts to apply the categorical approach, particularly in the immigration context.  But even accepting that only a legislative act could dissolve the categorical approach in toto, the Supreme Court itself could alleviate part of the problem by permitting a more practical inquiry under the modified categorical approach.

In particular, if the record of conviction reveals that a defendant was convicted of a certain statutory alternative—whether the alternative is formally an element or a means—then the modified categorical approach should be satisfied. No inquiry into "divisibility" would be required. Here, for example, the record makes it "obvious" and "clear" that the non-matching alternative—fraud in the inducement—played no role in Petitioner's conviction. That should be the end of the inquiry, as the BIA held. Yet *Mathis* requires us to hold that the modified categorical approach is wholly inapplicable because, in some theoretical way that bears no relationship to the real world, Petitioner could have been convicted of rape by fraud in the inducement. When we apply the categorical approach, we are instructed that there must be a "realistic probability, not a theoretical possibility," of a mismatch. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). That same principle should apply with equal force when we apply the modified categorical approach.

The pragmatic methodology that I suggest is not new. The Supreme Court hinted at this precise approach in *Descamps*, 570 U.S. at 264 n.2. But, three years later, in 2016, the Court definitively rejected that interpretation in the split decision in *Mathis*, 136 S. Ct. at 2256.

Six years hence, *Mathis* has, in my view, not aged well. For example, even if the record suggests that a petitioner was convicted of a matching alternative, we have certified the elements/means question to state supreme courts—extending the burden of the categorical inquiry to state courts and causing even more delay in the federal proceedings. *See, e.g.*, *Romero-Millan v. Barr*, 958 F.3d 844, 848 n.1 (9th Cir. 2020) (order) (certifying whether Arizona's drug laws are divisible because Arizona's list of contraband, but not the corresponding federal list, includes

"benzylfentanyl and thenylfentanyl"); *cf. Mathis*, 136 S. Ct. at 2259 (Breyer, J., dissenting, joined by Ginsburg, J.) (predicting that *Mathis* would "unnecessarily complicate" the law by requiring an inquiry that is "not practical"). We have gone so far as to require a district court to undertake a scientific factual inquiry into whether a theoretically possible version of a drug exists, even though by posing the question we know that the defendant did not possess that theoretically imagined substance. *See United States v. Rodriguez-Gamboa*, 946 F.3d 548 (9th Cir. 2018) (remanding for the district court to test the government's "factual assertion that the geometric isomer of methamphetamine does not exist"); *cf. Mathis*, 136 S. Ct. at 2268 (Alito, J., dissenting) (predicting that *Mathis* will require courts to answer "pointless abstract questions"). In short, the *Mathis*-constrained version of the modified categorical approach unnecessarily prolongs proceedings; burdens federal courts, federal agencies, and state courts; defers definitive resolution for defendants, petitioners, and the public; and often produces absurd results that lack any connection to what really occurred.

Petitioner's abhorrent conduct in committing rape should not be overlooked merely because California has expanded its definition of "rape" to encompass conduct that did not occur here. Yet, under *Mathis*, we must ignore the record and conclude that Petitioner is statutorily eligible for relief. In other contexts, the Supreme Court has reversed itself when an earlier pronouncement has proven unwieldy. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (unanimously overruling the holding of *Saucier v. Katz*, 533 U.S. 194 (2001), after only seven and a half years, for many reasons that apply similarly to *Mathis*). I respectfully encourage the Court to reconsider its decision in *Mathis* in an appropriate case.