103 P.3d 217 (2004)
124 Wash.App. 696
STATE of Washington, Respondent,
v.
Richard Leon HOSIER, Appellant.
No. 51972-7-I.
Court of Appeals of Washington, Division 1.
December 20, 2004.
*219 Eric Nielsen, Sea., WA, for Appellant.
Seth Fine, Everett, WA, for Respondent.
APPELWICK, J.
Richard Hosier was convicted of two counts of communication with a minor for immoral purposes (CMIP), one count of attempted CMIP, and two counts of harassment. The convictions were based on sexually explicit messages Hosier wrote, and placed where it was likely that children and/or young women would find them. Hosier challenges his convictions on all five counts on the grounds that there is insufficient evidence to support them. He also challenges the trial court's denial of his motion to suppress evidence found during a search of his residence pursuant to a search warrant. We affirm.

FACTS
On May 2, 2002, several three- and four-year-old children notified staff at the Kids N Us Day Care (day care) that they had found a pair of girl's underwear on the chain link fence that encircled the day care's playground. The following message was written on the underwear:
I love baby sitting this little girl 7 yr old and already as nasty as most big girls ever get she does everything but fuck and real soon I'll be getting it all she is ready and willing just got to open up the gold mine to heaven ... daddy.
On June 24, 2002, Mr. Smith, whose house was across the street from Hosier's residence, was mowing his yard when he discovered two notes on the grass. One note read "I love to eat young fat girls pussys (sic)." The second note read: "Has your pussy ever played with by a stranger who just wanted to be as nasty as he could get. Baby I want to play with yours right now while I stick my tounge (sic) in and out of your tight asshole."
Smith notified the police. Based on a comparison of the notes with samples of Hosier's handwriting on file from his registration as a sex offender, a handwriting examiner opined that there was a 75 percent chance that Hosier had written the notes. Smith was worried that the notes were intended for his 13- year-old daughter, M.S., who frequently played on the lawn and had been playing on the lawn earlier that day.
On July 15, 2002, a teacher at the day care found a second pair of underwear in the day care parking lot. Written on them was the message, "She said she liked me to play with pussy and let me lick and suck on it to (sic) so nice and sweet."
On July 29, 2002, a student at the Everett School of Cosmetology (cosmetology school) found a note in the school's designated smoking area which read:
I want to catch some real young girls and take them someplace where I can do anything I want to them!!!! (At least 2)
First I would tie them up between eather (sic) trees or stakes cut all thier (sic) clothing off of them and play with thier (sic) pussys licking, sucking, maybe even finger fucking them.
Then I'd make them play with each other eating pussys. Just being real nasty with each other.
I'd get all kinds of kinky toys to play with and make movies of them useing (sic) them on each other I'd keep them for at least (sic) a week and do everything to them. Spankings all kinds of things in thier (sic) pussys ass holes, and mouthes (sic). When I had thier (sic) pussys stretched big enough to put my whole hand in side them open and close it
I'd let them go.
On July 31, 2002, an employee at a Bartell Drug Store in Everett (Bartells) found a note *220 near a cash register which read, "I love licking the tight little ass hole of a young girl  slipping my tounge (sic) in and out while I finger fuck her pussy." Ms. Swint, a student at the cosmetology school, who sometimes smoked in the designated smoking area, also worked at Bartells. She was the only student at the school who also worked at the store, which was approximately a twenty minute drive from the school.
On August 1, 2002, Hosier was arrested. Also on August 1, 2002, the police sought and received a warrant to search Hosier's residence. In a taped interview with the police, Hosier admitted to putting the notes on the Smith's lawn, and stated that the note about the fat girl was intended for M.S. On January 31, 2003, Hosier was charged by second amended information with three counts of CMIP and two counts of harassment. For each of the three CMIP counts, the State alleged that Hosier had a prior conviction for a felony sex offense, rendering the charged counts felonies. The two harassment charges were misdemeanors.
Prior to trial, Hosier filed a motion to suppress the evidence obtained in the search of his residence. The trial court denied his motion. Following a bench trial, Hosier was convicted of two counts of CMIP, one count of attempted CMIP and two counts of harassment. The trial court sentenced Hosier to 60 months in prison and two years of probation for each of the three misdemeanors on his convictions. Hosier appeals.

ANALYSIS

I. Communication with a Minor for Immoral Purposes
Hosier asserts that there was insufficient evidence before the trial court to support his convictions for CMIP and attempted CMIP under RCW 9.68A.090.
A criminal conviction violates a defendant's constitutional right to due process unless each element is supported by sufficient evidence. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). Where the sufficiency of evidence is challenged, this court on review determines whether a reasonable finder of fact could find that the challenged element of the charged crime was proved beyond a reasonable doubt. Green, 94 Wash.2d at 220-21, 616 P.2d 628. The evidence is taken in the light most favorable to the state. Green, 94 Wash.2d at 221, 616 P.2d 628.
RCW 9.68A.090 is part of a legislative effort to prohibit sexual misconduct. State v. McNallie, 120 Wash.2d 925, 931, 846 P.2d 1358 (1993). The statute states:
A person who communicates with a minor for immoral purposes is guilty of a gross misdemeanor, unless that person has previously been convicted under this section or of a felony sexual offense under chapter 9.68A., 9A.44, or 9A.64 RCW or of any other felony sexual offense in this or any other state, in which case the person is guilty of a class C felony punishable under chapter 9A.20 RCW.
Chapter 9.68A RCW provides ample notice of the Legislature's intent to prohibit sexual exploitation and misconduct with persons under the age of eighteen. McNallie, 120 Wash.2d at 932-33, 846 P.2d 1358. It "prohibits communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct." McNallie, 120 Wash.2d at 933, 846 P.2d 1358. "`Communicate,' [as the term is used] within RCW 9.68A.090, includes conduct as well as words, and `immoral purpose' refers to sexual misconduct." State v. Pietrzak, 100 Wash.App. 291, 295, 997 P.2d 947 (2000).
Hosier was convicted under RCW 9.68A.090 of one count of CMIP based on two sexually explicit notes he left on Smith's lawn. He was convicted of a second count of CMIP based on his act of having left a pair of little girl's underwear, with explicit, graphic language about proposed sexual activity with a seven-year-old girl, on the fence of the day care. Hosier was convicted of one count of attempted CMIP for his act of leaving a pair of girl's underwear with sexually explicit writing on them on the parking lot of the day care.

A. Count I: M.S.
Hosier placed two sexually explicit notes on the Smith's lawn, on which he knew *221 M.S. played. Hosier admitted that he intended for M.S. to receive at least one of the notes. There is no doubt that the notes described sexual misconduct or that if M.S. had found and read the notes that the crime would have been completed. Hosier asserts that because Smith, rather than M.S., found the notes, M.S. was "never exposed to the words or conduct `communicating' an immoral purpose." He further contends that the State therefore failed to prove the communication element of CMIP for Count I.
The Smith's lawn was visible from Hosier's residence. Hosier frequently observed M.S. playing on the lawn of her parent's home, had watched M.S. as she undressed in her bedroom, and had observed M S. playing on the lawn on the day he left one of the sexually explicit notes on the Smith's fence. M.S.'s father found both notes while he was mowing the lawn. He testified that the notes were "very sexual", "seemingly threatening", and described M.S. Smith also testified that he told M.S. that:
I found some notes that were very sexual and they were seemingly threatening and that I didn't know who had written them, but to be extra careful and don't be alone on the street and that I was going to take the notes to the police.
Smith also informed M.S. that the notes "kind of described her." He was sufficiently concerned about his daughter's safety that he cautioned her to be extra careful and instructed her not to go out onto the street alone. Based on these facts, the trial court found that Smith was a "conduit" between Hosier and M.S.
It was reasonably foreseeable that Smith would find the notes. It is highly foreseeable that, based on the contents of the notes, Smith would communicate to M.S. that she was at risk of being sexually exploited and that she should act with caution. Although Smith did not read the notes verbatim to M.S., it is clear that he conveyed the sexual and threatening nature of the content of the notes to her in an effort to caution and protect her. These facts are sufficient to fulfill the communication element of CMIP.
Relying on McNallie, Hosier also asserts that the record does not show he had the requisite "predatory purpose" to fulfill the statute. His argument is analogous to the defendant's argument in McNallie that indirect or oblique communicative strategies are not within the parameters of RCW 9.68A.090.
In McNallie, a defendant appealed his conviction under RCW 9.68A.090 for two counts of CMIP, arguing that the state had not met its burden of proof. McNallie, 120 Wash.2d at 928, 846 P.2d 1358. The defendant in McNallie asked three 10- and 11-year-old girls "if there was anyone in the area who gave hand jobs." McNallie, 120 Wash.2d at 926, 846 P.2d 1358. On appeal he assigned error to the trial court's refusal to give his proposed jury instruction, arguing that under RCW 9.68A, the term "immoral purposes" must be construed as referring only to communications where a defendant involves a minor in activity expressly defined as "sexual exploitation." McNallie, 120 Wash.2d at 929, 846 P.2d 1358. The Supreme Court disagreed, and stated:
RCW 9.68A.090 does not require the defendant to have made an express offer of payment to a minor in exchange for the minor engaging in sexual conduct. It is sufficient under the statute that the defendant indicated to the minor he would pay anyone for engaging in specific sexual conduct. Such communication, while not the only type which would incur criminal liability under RCW 9.68A.090, represents a predatory undertaking. McNallie not only expressed an interest but a present interest in sexual contact for a fee to the impressionable children in this case. It is unnecessary under the statute for the defendant to have actually communicated a valid contractual "offer" to a 10- or 11-year-old child. An invitation or inducement to engage in behavior constituting indecent liberties with or without consideration, for example, would also satisfy the statute.
McNallie, 120 Wash.2d at 933-34, 846 P.2d 1358[1] The Court also held:
[T]he communication statute, as written and currently located in the code, does not *222 only contemplate participation by minors in sexual acts for a fee, or appearance on film or in live performance while engaged in sexually explicit conduct. Rather, the statute prohibits communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct.
McNallie, 120 Wash.2d at 933, 846 P.2d 1358.
Hosier's act of writing sexually explicit words directed at children was no less an invitation than had he uttered the words as did McNallie. The predatory purpose is supported by sufficient evidence. Viewing the evidence in a light most favorable to the State, we find it sufficient to conclude that Hosier's actions constituted a completed communication with M.S.

B. Count II: Day Care Playground
Count II was based on Hosier's act of leaving a pair of girl's underwear on the fence at the day care. Children at the day care discovered the underwear, poked them through the fence, and reported their find to staff at the day care. Hosier asserts that because the children who found the underwear were unable to read, there was no communication.
Hosier cites no authority requiring a victim to understand the sexual nature of a communication. Nor do we interpret RCW 9.68A.090 to mean that a victim must understand the prurient nature of a communication. This court assumes that the legislature did not intend an absurd result and will construe statutes accordingly to effect legislative intent. Esparza v. Skyreach Equip., Inc., 103 Wash.App. 916, 938, 15 P.3d 188 (2000). To require that a minor understand the explicitly prurient nature of a communication in order to fulfill the elements of the crime of CMIP, we would either need to restrict the statute's application to victims sexually mature beyond their years, or to omit from its reach the very victims it is intended to protect. There is no reasonable basis to presume that the Legislature intended such an absurd result. The children's exposure to the underwear with the sexually explicit message on it was sufficient to support the finding that Hosier completed his communication with the children for an immoral purpose.

C. Count III: Day Care Parking Lot
The third count of Hosier's conviction was for attempt to commit CMIP. "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020. A substantial step is an act that is "strongly corroborative of the actor's criminal purpose." State v. Workman, 90 Wash.2d 443, 451, 584 P.2d 382 (1978).
Hosier wrote the note on girl's underwear and placed it in the day care driveway. The driveway was directly in front of the main entrance to the day care, and thus easily visible to an individual entering the day care. An adult employee of the day care, not a child, found the second pair of underwear. Unlike M.S.'s father, the employee did not convey the threatening content of the note to the children. The children therefore neither received the underwear containing Hosier's message, nor the message itself. Thus, Hosier's effort to communicate with the children was incomplete.
A reasonable trier of fact could find that he intended children to find the underwear. His act of placing a pair of underwear on the driveway of the day care was a substantial step towards the commission of the crime of CMIP. The record supports the trial court's finding that Hosier's act of leaving a second pair of underwear in the day care parking lot constituted attempted CMIP.

II. Harassment
Hosier also challenges his conviction for two counts of harassment. Based on notes Hosier left at the cosmetology school and at Bartells, where Swint, one student of the cosmetology school worked, the trial court found Hosier guilty of two counts of harassment under RCW 9A.46.020.
RCW 9A.46.020 states:
(1) A person is guilty of harassment if:
(a) Without lawful authority, the person knowingly threatens:

*223 (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or
(ii) To cause physical damage to the property of a person other than the actor; or
(iii) To subject the person threatened or any other person to physical confinement or restraint; or
(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and
(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. Words or conduct includes, in addition to any other form of communication or conduct, the sending of an electronic communication.
Hosier concedes that the statute prohibits "true threats," but claims that there is insufficient evidence that he made "true threats."
"A true threat is a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted ... as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual]." State v. Williams, 144 Wash.2d 197, 207-08, 26 P.3d 890 (2001) (quoting State v. Knowles, 91 Wash.App. 367, 373, 957 P.2d 797 (1998) (original alternation)) (quoting United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir.1990)).
Hosier contends that the note he left at the cosmetology school cannot be considered a true threat because, although it referenced confinement and restraint of young women, "Swint did not believe, that Hosier intended to kidnap her, tie her up and sexually assault her." The facts do not support Hosiers claim.
Hosier left one note at the cosmetology schools designated smoking area, an area frequented by Swint. He left a second note adjacent to a cash register, attended by Swint, at Bartells located about twenty minutes away from the school. Following the discovery of the second note at Bartells, Swint believed that Hosier had targeted her and that he might carry out his threat. Swints actions corroborated her fear. Following the discovery of the second note at Bartells, she began carrying mace, stopped riding the bus, and stopped going places alone. The content of these notes and the context of their placement made it reasonable for Swint to fear that Hosier would carry out his threat. Swint testified that she was worried about the safety of her classmates as well as her own safety.
Hosier also maintains that the note he placed at Bartells did not physically threaten anyone, and therefore cannot be considered a true threat. Although the note Hosier left at Bartells did not explicitly threaten physical harm, the sexually graphic, aggressive content of the note would constitute physical harm if the acts they contemplated were completed. Hosier did not expressly identify a victim by name in the notes. Nevertheless, he knew the cosmetology school smoking area was frequented by female students. It was reasonable for Swint to infer that she was being targeted when she learned that a second note had been placed near her work station at Bartells. The content of Hosiers notes, in the context of his strategic placement of them, creates a reasonable inference of an explicit physical threat to Swint. Moreover, RCW 9A.46.020 "also prohibits threats to do any other act which is intended to substantially harm the person threatened ... with respect to his or her... mental health or safety." Williams, 144 Wash.2d at 208, 26 P.3d 890. Even assuming arguendo that Swint reasonably did not fear for her physical safety, the record shows that Hosiers notes made Swint fearful and compromised her mental health.
Hosier also argues that under State v. Kilburn, 151 Wash.2d 36, 84 P.3d 1215 (2004) his notes did not constitute "true threats" because the State did not prove that he intended to carry out his threats. Kilburn does not support Hosier's assertion that his notes were not "true threats."
In Kilburn, a juvenile challenged his conviction under RCW 9A.46.020 on the grounds that the State had not proved he intended to carry out the threat. Kilburn, 151 Wash.2d at 38, 84 P.3d 1215. Explaining that intent *224 need not be shown, the Washington Supreme Court stated:
To avoid unconstitutional infringement of protected speech, RCW 9A.46.020(1)(a)(i) must be read as clearly prohibiting only "true threats."
The reason that "true threats" are not protected speech is because there is an overriding governmental interest in the" `protect[ion of] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur.'" We have adopted an objective test of what constitutes a "true threat": A "true threat" is "`a statement made in a "context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted ... as a serious expression of intention to inflict bodily harm upon or to take the life"'" of another person. A true threat is a serious threat, not one said in jest, idle talk, or political argument. Under this standard, whether a true threat has been made is determined under an objective standard that focuses on the speaker.
Kilburn, 151 Wash.2d at 43-44, 84 P.3d 1215. (Internal citations omitted.) Thus, although RCW 9A.46.020 does require a "mental element" because that statute states that the defendant "knowingly threatens ....," it "does not require that the State prove that the speaker intended to actually carry out the threat." Kilburn, 151 Wash.2d at 48, 84 P.3d 1215.
Hosier does allege that his notes were in jest or were idle talk. However, a reasonable person would foresee Hosier's notes, taken in the context of each other, as serious expressions of intent to inflict bodily harm. The trial court had before it sufficient evidence to find that Hosier engaged in criminal harassment when he placed notes at the cosmetology school and at Bartells.

III. Search Warrant
Hosier asserts that the search warrant issued for his residence failed to satisfy the constitutional particularity requirement, was stale, and did not establish a valid basis for believing relevant evidence would be found. He maintains that the trial court therefore erred in denying his motion for suppression.
"The fourth amendment[2] requires that an affidavit supporting a warrant establish probable cause." State v. Nordlund, 113 Wash.App. 171, 179, 53 P.3d 520 (2002). Probable cause in an affidavit supporting a search warrant is established "by setting forth facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity." State v. Huft, 106 Wash.2d 206, 209, 720 P.2d 838 (1986). The trial court is entitled to great deference in its probable cause determination. State v. Cord, 103 Wash.2d 361, 366, 693 P.2d 81 (1985). We review challenges to a search warrant for an abuse of discretion. Nordlund, 113 Wash.App. at 180, 53 P.3d 520.
Hosier first contends that the search warrant violated the particularity requirement. The fourth amendment's particularity requirement prevents general searches and "`the issuance of warrants on loose, vague, or doubtful bases of fact.' "Nordlund, 113 Wash.App. at 179-80, 53 P.3d 520 (quoting State v. Perrone, 119 Wash.2d 538, 545, 834 P.2d 611 (1992)).
To satisfy the particularity requirement, the warrant must be sufficiently definite to allow the searching officer to identify the objects sought with reasonable certainty. The degree of required specificity turns on the circumstances and the type of items involved. A description is valid if it is as specific as the circumstances and the nature of the activity, or crime, under investigation permits.
Nordlund, 113 Wash.App. at 180, 53 P.3d 520 (Internal citations omitted.) Affidavits for search warrants are to be read in a commonsense rather than a hyper technical fashion. State v. Fisher, 96 Wash.2d 962, 965, 639 P.2d 743 (1982).
*225 The warrant issued for Hosier's residence authorized a search for:
(a) Any and all handwriting examples, correspondence, notes, diaries, financial records, checks, journals or other items where HOSIER's handwriting is displayed.
(b) Any and all writing materials to include but not limited by: notepads, scraps of paper, ledgers or like material.
(c) Any and all writing utensils with dark colored ink and "felt tipped" type or similarly designed markers.
(d) Any and all letters of occupancy identifying the occupant of the residence to be searched.
The following items were seized from Hosier's residence:
(1) briefcase containing papers, various blank papers, various ink pens & markers (some in containers)[,] (1) black vest containing rope, plastic ties, pens, etc., various pornographic magazines and photographs, childrens (sic) underwear, various notes and letters[,] wood board with writing[,] various notebooks, container of drug paraphernalia.
Hosier contends that there was no need for a warrant to locate samples of his handwriting because an expert had ascertained with sufficient accuracy that he was the author of the sexually explicit notes. Notwithstanding the expert's conclusion that Hosier authored the notes, the court had probable cause to issue an affidavit to obtain samples of Hosier's handwriting from his residence. The affidavit stated:
A court order may be requested to have HOSIER submit to handwriting exemplars, however suspects forced to display their handwriting in such a setting are prone to attempt to disguise their samples to avoid being named the author of the suspect script. Likewise, after a suspect was subjected to the exemplar process and knew that he was the focal point of the crime, he would likely destroy any/all evidence of the sought materials secreted in his home. Therefore, handwriting samples at HOSIER's home are sought in order to provide the most authentic representation of his handwriting for forensic examination by an expert in the field.
Hosier also asserts that there existed "no basis for believing that forensic evidence could tie a particular marker" to the notes he had written. The record supports the trial court's conclusion that there was probable cause to issue the warrant. Hosier provides no authority or evidence to support his assertion that forensic science would be unable to link the materials found in a search of his residence to the notes found at the Smith residence, the day care, or Bartells.
Hosier also contends that because "[n]umerous items not constituting writing utensils (sic) or materials, and therefore clearly outside the scope of the warrant, were seized and later used as evidence at trial," his motion to suppress all physical evidence and his statements should have been granted. But even if the rope and other items were illegally seized, the proper remedy is to sever these items from evidence seized pursuant to valid parts of the search warrant. "Under the severability doctrine, infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant but does not require suppression of anything seized pursuant to valid parts of the warrant." State v. Perrone, 119 Wash.2d 538, 556, 834 P.2d 611 (1992) (quoting in part United States v. Fitzgerald, 724 F.2d 633, 637 (8th Cir.1983), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984)). The trial court did not err in refusing to suppress all evidence seized under the warrant.
Hosier also argues that the police's seizure of items that were not writing implements and materials violated the particularity requirement. Hosier appears to refer to the underwear and rope among the materials which the police seized. Hosier does not deny that he wrote some of his notes on underwear. The underwear therefore constituted writing materials.
The police also seized a "vest containing rope, plastic ties, pens, etc." "[E]vidence not described in a valid search warrant but having [a] nexus with [the] crime under investigation *226 may be seized during [a] search." State v. Gonzales, 78 Wash.App. 976, 982, 900 P.2d 564 (1995) (citing United States v. Kane, 450 F.2d 77, 85 (5th Cir.1971), cert. denied, 405 U.S. 934, 92 S.Ct. 954, 30 L.Ed.2d 810 (1972)). At least one of Hosier's notes explicitly referenced tying young girls up in order to engage in sexual acts with them. There thus was a nexus to the crime under investigation. The rope was legitimately seized as potential evidence that Hosier had intent to carry through with his threats.
Even if the seizure of the rope was invalid, and its admission therefore improper, its admission was harmless error. The record shows that the trial court relied upon the written notes and upon Hosiers oral statements, not the rope, to convict him. On this record, whether the rope is severed from other evidence obtained in the search, or offered as evidence, it is clear that it was harmless error because the remaining evidence and testimony standing alone supports Hosiers conviction.
Hosier also maintains that the search warrant was stale because there was a "5-week delay between the finding of the notes and the search of Hosier's home." Hosier's argument is merit less.
In State v. Smith, 60 Wash.App. 592, 602, 805 P.2d 256 (1991) this court explained in order for a warrant to be valid, there must be
[a] reasonable probability that criminal activity was occurring `at or about the time the warrant was issued.' State v. Higby, 26 Wash.App. 457, 460, 613 P.2d 1192 (1980). `Tabulation of the intervening number of days' is one of the factors to be considered, but is not controlling. Higby, supra at 460, 613 P.2d 1192. Other factors to be considered include the nature of the crime, the nature of the criminal, the character of the evidence to be seized, and the nature of the place to be searched. See 2 W. LaFave, section 3.7(a), at 77; Higby, supra.
In this case, the warrant to search Hosier's residence was issued on August 1, 2002, following the fifth, and final, incident leading to Hosier's arrest. The first of the five incidents occurred on May 2, 2002, when an employee at the day care found a pair of "little girl's panties," with Hosier's writing on them, stuck in the fence of the day care facility. On June 24, 2002, Mr. Smith, Hosier's neighbor, found two notes with sexual content written by Hosier on the grass in his yard. On July 15, 2002, the same teacher who had found the underwear on the fence of the day care facility on May 2, 2002, found a second pair of girl's underwear with sexual writing by Hosier on them on the day care's driveway. On July 29, 2002, a student at the cosmetology school found one of Hosier's notes in the school's designated smoking area. The final incident occurred on July 31, 2002, when an employee at Bartells found one of Hosier's notes near the cash register where one of the cosmetology school's female students worked. On August 1, 2002, the Everett police department obtained a search warrant for Hosier's residence. Thus, probable cause was not based on the incident occurring five weeks prior to the issuance of the search warrant, the two notes to M.S., as a single, isolated occurrence. Rather, the search warrant was based on five incidents over the course of approximately two months, and issued on the day after Hosier left a sexually explicit note at Bartells. Under these facts, Hosier' argument that the warrant was stale is baseless.
Affirmed.
WE CONCUR: COX, C.J, and AGID, J.
NOTES
[1] It is clear that this case did not involve payment for sexual acts.
[2] "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.