FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VICTOR RODRIGUEZ-
HERNANDEZ,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney
General,

*Respondent*,

----------------------------------------

NORTHWEST IMMIGRANT
RIGHTS PROJECT;
WASHINGTON DEFENDER
ASSOCIATION,

*Amici Curiae*.

No. 21-456

Agency No.
A208-444-360

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 20, 2023
Portland, Oregon

Filed December 27, 2023

Before: Johnnie B. Rawlinson, Carlos T. Bea, and Jennifer Sung, Circuit Judges.

Opinion by Judge Rawlinson

## SUMMARY[*]

## Immigration

Denying Victor Rodriguez-Hernandez's petition for review of a decision of the Board of Immigration Appeals, the panel concluded that: 1) Rodriguez-Hernandez's harassment conviction, in violation of Revised Code of Washington (RCW) § 9A.46.020(1), was categorically for a crime of violence aggravated felony that made him ineligible for discretionary relief from removal; and 2) substantial evidence supported the denial of relief under the Convention Against Torture (CAT).

The panel explained that the Washington statute, as interpreted by the Washington courts, is not divisible. Thus, the panel concluded that the BIA correctly applied the categorical approach and, likewise, the panel could not look to the underlying facts to determine which subsection Rodriguez-Hernandez violated.

Rodriguez-Hernandez maintained that his conviction was not categorically for a crime of violence under 18 U.S.C. § 16(a) because RCW § 9A.46.020(1) criminalizes conduct

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

that does not involve the use of physical force. Rejecting that contention, the panel explained that the statute, as interpreted by Washington courts, requires the "threatened use of physical force against the person or property of another," as set out in 18 U.S.C. § 16(a). In addition, the panel explained that Rodriguez-Hernandez had not shown a realistic probability that Washington would apply RCW § 9A.46.020(1) to de minimis contact rather than force capable of causing physical pain or injury. As a result, the panel concluded that the BIA properly held that Rodriguez-Hernandez's conviction was for a crime of violence aggravated felony that made him ineligible for cancellation of removal, asylum, and voluntary departure.

As to CAT relief, the panel concluded that Rodriguez-Hernandez did not establish that it was more likely than not that he would be tortured with the consent or acquiescence of a public official. Although Rodriguez-Hernandez testified that his family received a threatening call warning that he would be kidnapped when he visited Mexico, Rodriguez-Hernandez was unable to identify who made the threats, his family did not make any payments, and he did not plan on visiting Mexico.

## COUNSEL

N. David Shamloo Esq. (argued), The Law Office of N. David Shamloo LLC, Portland, Oregon, for Petitioner.

Andrew B. Insegna (argued), Trial Attorney; Anthony P. Nicastro, Assistant Director; Brian Boynton, Principal Deputy Assistant Attorney General, Office of Immigration Litigation, Civil Division, United States Department of Justice, for Respondent.

## OPINION

RAWLINSON, Circuit Judge:

Victor Rodriguez-Hernandez (Rodriguez-Hernandez), a native and citizen of Mexico, petitions for review of a decision of the Board of Immigration Appeals (BIA) dismissing his appeal of the denial by an Immigration Judge (IJ) of cancellation of removal, asylum, withholding of removal, and relief under the

Convention Against Torture (CAT). Rodriguez-Hernandez contends that the BIA erred when it held that his harassment conviction in violation of Revised Code of Washington (RCW) § 9A.46.020 was categorically for a crime of violence, thereby rendering him ineligible for cancellation of removal, asylum, and voluntary departure. In addition, Rodriguez-Hernandez asserts that substantial evidence does not support the denial of CAT relief.**[1]**

## I.   BACKGROUND

In 2015, Rodriguez-Hernandez was served with a notice to appear alleging removability on the basis that he was not admitted or paroled into the United States. Rodriguez-Hernandez conceded removability and applied for cancellation of removal, asylum, withholding of removal, and CAT relief. Rodriguez-Hernandez maintained that he faced persecution in Mexico due to threats made against his family.

---

[1] The agency also denied withholding of removal. Rodriguez-Hernandez has forfeited any challenge to that ruling due to his failure to raise it in his Opening Brief. *See Nguyen v. Barr*, 983 F.3d 1099, 1102 (9th Cir. 2020).

In his application for cancellation of removal, Rodriguez-Hernandez acknowledged that, in 2009, he was convicted of "misdemeanor [h]arrassment-[domestic violence]," and "sentenced to 365 days in jail." When Rodriguez-Hernandez entered his guilty plea, RCW § 9A.46.020(1), the statute of conviction, provided that:

> (1) A person is guilty of harassment if:
>
> > (a) Without lawful authority, the person knowingly threatens:
> >
> > > (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or
> > >
> > > (ii) To cause physical damage to the property of a person other than the actor; or
> > >
> > > (iii) To subject the person threatened or any other person to physical confinement or restraint; or
> > >
> > > (iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and
> >
> > (b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. Words or conduct includes, in addition to any other form of

> communication or conduct, the sending
> of an electronic communication.

RCW § 9A.46.020(1) (2009).

During his removal hearing, Rodriguez-Hernandez testified that he left Mexico in 1989. Rodriguez-Hernandez related that his cousin in Mexico received a threatening telephone call in 2011. His cousin was not harmed and subsequently moved. Rodriguez-Hernandez's family also received a call threatening that Rodriguez-Hernandez would be kidnapped when he visited Mexico if his family did not pay "25,000 pesos." Rodriguez-Hernandez was not able to identify who made the threats, and his family did not make any payments. Rodriguez-Hernandez confirmed that his family was never harmed, and that he feared "[j]ust the violence" if he was removed to Mexico.

The IJ denied Rodriguez-Hernandez's applications for cancellation of removal, asylum, withholding of removal, and CAT relief. The IJ found Rodriguez-Hernandez ineligible for cancellation of removal, asylum, and voluntary departure because his conviction under RCW § 9A.46.020(1) was for an aggravated felony.

Although the IJ opined that RCW § 9A.46.020(1) was not categorically a crime of violence because subsections (a)(iii) and (iv) could "potentially be violated without involving physical force," the IJ concluded that the statute was divisible because it delineated "alternative elements" of the offense. Applying the modified categorical approach,[2]

---

[2] When the statute of conviction is divisible, a court may, using the modified categorical approach, "look at charging documents, jury instructions, plea agreements, colloquies, and other equally reliable documents to determine which elements underlie a . . . conviction."

the IJ held that Rodriguez-Hernandez was convicted of a crime of violence for "knowingly threatening to cause bodily injury immediately or in the future to the person threatened or to any other person."

The IJ denied withholding of removal because Rodriguez-Hernandez did not establish that he was a member of a cognizable particular social group. The IJ concluded that Rodriguez-Hernandez's proposed social group comprised of "victims of extortion" was not sufficiently distinct to support withholding of removal.

The IJ denied protection under the CAT because Rodriguez-Hernandez failed to establish that it was more likely than not that he would be tortured if removed to Mexico.

The BIA dismissed Rodriguez-Hernandez's appeal. The BIA agreed with the IJ's determination that Rodriguez-Hernandez's conviction for harassment in violation of RCW § 9A.46.020(1) was for an aggravated felony, thereby rendering Rodriguez-Hernandez ineligible for cancellation of removal, asylum, and voluntary departure. The BIA concluded that an offense in violation of RCW § 9A.46.020(1) was categorically a crime of violence, requiring the offender to knowingly "threat[en] to use physical force against the person or property of another."

The BIA also determined that Rodriguez-Hernandez was not entitled to withholding of removal because he failed to sufficiently demonstrate that he would be persecuted on account of a protected ground.

---

*United States v. Tagatac*, 36 F.4th 1000, 1004 (9th Cir. 2022) (citations, alteration, and internal quotation marks omitted).

Finally, the BIA affirmed the IJ's denial of CAT relief because Rodriguez-Hernandez did not establish that it was more likely than not that he "would be tortured in Mexico by, or with the consent or acquiescence . . . of a public official."

Rodriguez-Hernandez filed a timely petition for review.

## II.  STANDARDS OF REVIEW

We review *de novo* whether Rodriguez-Hernandez's harassment conviction is for an aggravated felony.  *See Amaya v. Garland*, 15 F.4th 976, 980 (9th Cir. 2021).

"[W]e review the BIA's denial of CAT relief for substantial evidence." *Gutierrez-Alm v. Garland*, 62 F.4th 1186, 1201 (9th Cir. 2023) (citation omitted).

## III.  DISCUSSION

### A.  Rodriguez-Hernandez's Harassment Conviction

Rodriguez-Hernandez contends that the BIA erred in holding that his harassment conviction in violation of RCW § 9A.46.020(1) was for a crime of violence under 18 U.S.C. § 16(a). [3]    Rodriguez-Hernandez maintains that his conviction was not categorically for a crime of violence because RCW § 9A.46.020(1) criminalizes conduct that does not involve the use of physical force.

Rodriguez-Hernandez "bears the burden of demonstrating he is eligible for discretionary relief from removal." *Valdez v. Garland*, 28 F.4th 72, 78 (9th Cir. 2022) (citation omitted) (addressing cancellation of removal); *see*

---

[3] 18 U.S.C. § 16(a) defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

*also Rendon v. Mukasey*, 520 F.3d 967, 973 (9th Cir. 2008), *as amended* (addressing asylum relief). "To do so, he must show that he: (i) satisfies the applicable eligibility requirements; and (ii) with respect to any form of relief that is granted in the exercise of discretion, that he merits a favorable exercise of discretion." *Valdez*, 28 F.4th at 78 (citation, alteration, and internal quotation marks omitted). "To meet the first requirement, he must show that he is not an aggravated felon." *Id.* (citation omitted). "A noncitizen convicted of an aggravated felony is not only deportable, but also ineligible for discretionary relief." *Id.* (citation and internal quotation marks omitted).

"In the crime of violence context, we compare the state statute to 18 U.S.C. § 16(a), rather than a generic assault statute, and we will only find a categorical match if *every* violation of the statute *necessarily* involves violent force." *Amaya*, 15 F.4th at 980 (citation and internal quotation marks omitted) (emphases in the original). "Unlike comparing a prior offense to one of the enumerated offenses, which is an exercise in mapping a state crime onto a federal crime, we need not compare the elements of the crime of conviction with the elements of the generic federal crime when analyzing whether an offense qualifies as a crime of violence pursuant to [18 U.S.C.] § 16(a)." *United States v. Alvarez*, 60 F.4th 554, 559 (9th Cir. 2023) (citation and internal quotation marks omitted). "As long as the underlying offense requires one of the specified uses of force—actual, attempted, or threatened—it qualifies as a crime of violence." *Id.* at 558 (citation omitted).

The BIA correctly applied the categorical approach in determining whether Rodriguez-Hernandez had been convicted of an aggravated felony because RCW § 9A.46.020(1) is not a divisible statute. Under Washington

law, "[a]n alternative means crime is one that provides that the proscribed criminal conduct may be proved in a variety of ways." *State v. Espinoza*, 474 P.3d 570, 575 (Wash. Ct. App. 2020) (citation, alteration, and internal quotation marks omitted). "When a defendant is charged with an alternative means crime, the jury need not be unanimous as to the means by which the crime was committed, so long as there is sufficient evidence to support each of the alternative means. . . ." *Id.* (citation omitted). Washington courts have recognized that RCW § 9A.46.020(1) "is an alternative means crime, with the four alternatives set forth in subsection (1)(a)(i)-(iv)." *Id.* at 577 (citation omitted). Additionally, Washington Pattern Criminal Jury Instruction (WPIC) 36.07 provides that, for convictions under RCW § 9A.46.020(1), "the jury need not be unanimous as to which of alternatives [(1)(a),] [(1)(b),] [(1)(c),] or [(1)(d)] has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt." WPIC 36.07.

Absent a requirement that the jury "unanimously agree on which of the statutory alternatives a defendant committed to return a conviction, the alternatives are means." *Valdez*, 28 F.4th at 78 (citation, alteration, and internal quotation marks omitted). As the Washington statute as interpreted by the Washington courts is not divisible, "we cannot look to the underlying facts to determine which subsection [Rodriguez-Hernandez] violated." *Id.* at 78-79 (citation omitted).[4]

---

[4] Rodriguez-Hernandez asserts that our decision in *United States v. Werle*, 877 F.3d 879 (9th Cir. 2017) is dispositive of the crime of violence issue because we held in *Werle* that Washington's harassment statute was not categorically a crime of violence. In *Werle*, we opined

Amici rely on two factual hypotheticals which they believe demonstrate that the statute criminalizes conduct that does not rise to the level of "violent force."  First, Amici argue that the statute criminalizes unlawful imprisonment by deception, which they contend does not rise to the level of "violent force" because unlawful imprisonment by deception can be accomplished without the use or threatened use of force.  Second, Amici argue that the statute criminalizes applying graffiti to property or defacing property, which they argue does not rise to the level of "violent force" because applying graffiti to property or defacing property requires only "the slightest application of [force] to push the button on the spray can."  We address each argument in turn.

"[A] crime of violence requires physical force against the person or property of another. . . ." *Alvarez*, 60 F.4th at 562 (citation and internal quotation marks omitted).  However, a crime of violence "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality."  *Id.* (citation

---

that RCW § 9A.46.020 "as a whole is not categorically a crime of violence under [United States Sentencing Guideline] § 4B1.2(a)(1)." *Id.* at 882.  However, § 4B1.2(a)(1) does not include the "threatened use of physical force against the . . . property of another" language present in 18 U.S.C. § 16(a). *Cf.* U.S.S.G. § 4B1.2(a)(1); 18 U.S.C. § 16(a).  Thus, *Werle* is not dispositive of the categorical analysis of RCW § 9A.46.020 that we must perform in this case.  Our ruling in *Werle* that the statute's "knowing threat" requirement satisfies the *mens rea* for a crime of violence nonetheless forecloses Rodriguez-Hernandez's contention that his harassment conviction was not for a crime of violence based on its *mens rea*. *Id.* at 883; s*ee also State v. J.M.*, 28 P.3d 720, 725 (Wash. 2001) (en banc) (explaining that, in RCW § 9A.46.020, "knowingly modifies threaten, and thus relates to each part of the applicable definition of threat") (citation and internal quotation marks omitted).

omitted).  "The standard is force *capable* of causing physical pain or injury. . . ."  *Id.* (citation and internal quotation marks omitted) (emphasis in the original).

In assessing whether there is "a realistic probability that a state statute exceeds the generic definition," we may consider whether the statute "expressly defines a crime more broadly than the generic offense."  *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020) (citation and internal quotation marks omitted).  A statute also is not a categorical match to the generic definition "if the petitioner can point to at least one case in which the state courts applied the statute in a situation that does not fit under the generic definition."  *Id.* (citation and internal quotation marks omitted).

RCW § 9A.46.020(1) is not facially overbroad because it does not "expressly define[ ] a crime," *id.*, in a manner lacking the "actual, attempted, or threatened" use of force.  *Alvarez*, 60 F.4th at 558 (citation omitted).  For example, in *Lopez-Aguilar*, the Oregon robbery statute was facially overbroad because "the text of the statute expressly include[d] situations involving consensual takings," whereas the federal statutory definition of a generic theft offense was limited to the "taking of property . . . *without consent.*"  *Lopez-Aguilar*, 948 F.3d at 1147-48 (citation omitted) (emphasis in the original); *see also Barrera-Lima v. Sessions*, 901 F.3d 1108, 1120 (9th Cir. 2018) (concluding that "Washington's indecent exposure statute" was "not categorically a crime involving moral turpitude" because it lacked the "critical" element of lewd intent).

"The Supreme Court has pointedly instructed that the categorical approach should not be applied in a legal vacuum and that a finding of overbreadth requires a realistic probability, not a theoretical possibility, that the State would

apply its statute to conduct that falls outside the generic definition of a crime. . . ." *United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1150 (9th Cir. 2020) (citation and internal quotation marks omitted). As the Supreme Court explained in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007):

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

Thus, "in applying the categorical approach to a state offense, we are bound by the state courts' interpretation of state law, including their determination of the elements of an offense." *Olea-Serefina v. Garland*, 34 F.4th 856, 863 (9th Cir. 2022) (citations, alteration, and internal quotation marks omitted).

Construing the reach of RCW § 9A.46.020, the Washington Supreme Court has explained that:

> The words "the threat" are key to [RCW § 9A.46.020(1)'s] meaning. In the case of a misdemeanor violation of the statute, "the threat" allegedly made is one of the four threats listed in subsection (1)(a), and the statute says that the State must prove that the person threatened was placed in reasonable fear of "the threat"—the actual threat made. Thus, to obtain a misdemeanor conviction based upon one of these threats, the State must prove the threat made and the threat feared are the same.

*State v. C.G.*, 80 P.3d 594, 596 (Wash. 2003) (en banc). The Washington Supreme Court elaborated that "[w]hatever the threat, whether listed in subsection (1)(a) or a threat to kill as stated in subsection (2)(b), the State must prove that the victim was placed in reasonable fear that the same threat, i.e., the threat, would be carried out." *Id.* at 597 (internal quotation marks omitted).

The Washington Supreme Court has also explained that RCW § 9A.46.020 for our analysis requires a "true threat," which "is a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another individual." *State v. Williams*, 26 P.3d 890, 896 (Wash. 2001) (en banc) (citation, alterations, and internal quotation marks omitted). The Washington Court of Appeals applied this rule in *State v. Hosier*, 103 P.3d 217

(Wash. Ct. App. 2004), an instructive case involving threatening notes "referenc[ing] confinement and restraint of young women." *Id.* at 223. The defendant maintained in *Hosier* that the note he left at a cosmetology school, "although it referenced confinement and restraint of young women," was not a true threat because the victim "did not believe that [the defendant] intended to kidnap her, tie her up and sexually assault her." *Id.* The defendant also asserted that another note placed at a drug store was not a true threat because it "did not physically threaten anyone." *Id.*

The Washington Court of Appeals concluded that "[t]he content of [the] notes, in the context of [the defendant's] strategic placement of them, create[d] a reasonable inference of an explicit physical threat to [the victim]." *Id.* The Washington Court of Appeals explicated that:

> The reason that true threats are not protected speech is because there is an overriding governmental interest in the protection of individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur. We have adopted an objective test of what constitutes a true threat: A true threat is a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another person. A true threat is a serious threat, not one said in jest, idle talk, or political argument. Under this standard, whether a true threat has been made

> is determined under an objective standard
> that focuses on the speaker.

*Id.* at 224 (citation, alterations, and internal quotation marks omitted).

Similarly, in *State v. Allen*, 255 P.3d 784 (Wash. Ct. App. 2011), the Washington Court of Appeals explained that "Washington courts interpret statutes criminalizing threatening language as proscribing only true threats." *Id.* at 795 (citation omitted). The Washington Court of Appeals elaborated that a "true threat is merely the definition of the element of threat which may be contained in a separate definitional instruction," and "the jury must be instructed that a conviction requires a true threat and must be instructed on the meaning of a true threat." *Id.* at 798 (citations, alteration, and internal quotation marks omitted). The Washington Court of Appeals noted that "the Washington Pattern Jury Instructions Committee amended the pattern instruction defining 'threat' so that it matches the definition of 'true threat.'" *Id.* at 796 (citation omitted).[5]

The requirement that the victim "be placed in reasonable fear that the threat would be carried out," *State v. Kiehl*, 113 P.3d 528, 531 (Wash. Ct. App. 2005), coupled with the true threat requirement, militates against a conclusion that RCW

---

[5] As early as 2008, prior to Rodriguez-Hernandez's guilty plea, the Washington Pattern Criminal Jury Instructions provided that "[t]o be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in [jest, idle talk, or political argument]." WPIC 2.24 (2008).

§ 9A.46.020(1)(a)(iii) could be committed by deception in the same manner as is possible with false imprisonment.

Under Washington law, "[a] person commits the crime of unlawful imprisonment when he knowingly restrains another person. To restrain means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty." *State v. Lansdowne*, 46 P.3d 836, 839 (Wash. Ct. App. 2002) (citation and internal quotation marks omitted). "Restraint is without consent if it is accomplished by (a) physical force, intimidation, or deception." *Id.* (citation, alteration, and internal quotation marks omitted). In contrast to false or unlawful imprisonment, RCW § 9A.46.020 requires a "true threat" involving "a serious expression of intention to inflict bodily harm upon or to take the life of another individual," *Hosier*, 103 P.3d at 223 (citation and alteration omitted), and that the victim "be placed in reasonable fear that the threat would be carried out." *Kiehl*, 113 P.3d at 531. Due to the true threat requirement, there is no indication in Washington precedent that harassment may be committed based on deception.

With respect to RCW § 9A.46.020(a)(ii), criminalizing threats "[t]o cause physical damage to the property of a person other than the actor," Rodriguez-Hernandez "must show a realistic probability, not a theoretical possibility" that Washington would apply RCW § 9A.46.020(1)(a)(ii) "to de minimis contact rather than force *capable* of causing physical pain or injury." *Alvarez*, 60 F.4th at 563 (citations and internal quotation marks omitted) (emphasis in the original). "He has not done so," particularly in light of Washington's true threat requirement. *Id.*

We are also unpersuaded that convictions for malicious mischief, which are criminalized in different statutes, [6] demonstrate that Rodriguez-Hernandez's harassment conviction is not categorically a crime of violence. Under Washington law, there are significant distinctions between malicious mischief offenses and harassment in violation of RCW § 9A.46.020(1). For malicious mischief offenses, the Washington statute specifically provides that:

> in addition to its ordinary meaning, [physical damage] shall include the total or partial alteration, damage, obliteration, or erasure of records, information, data, computer programs, or their computer representations, which are recorded for use in computers or the impairment, interruption, or interference with the use of such records, information, data, or computer programs, or the impairment, interruption, or interference with the use of any computer or services provided by computers. Physical damage also includes any diminution in the value of any property

---

[6] It is true that, "[t]hough the statute of conviction is inextricably tied to the defendant's conviction, nothing confines the categorical analysis to a single statute." *Alfred v. Garland*, 64 F.4th 1025, 1032 (9th Cir. 2023) (en banc). However, Rodriguez-Hernandez does not demonstrate that malicious mischief offenses, with entirely distinct statutory elements, "contribute to [the] meaning" of harassment offenses in violation of RCW § 9A.46.020. *Id.*

as the consequence of an act and the cost to
repair any physical damage.

RCW § 9A.48.100(1). Washington's harassment statute does not reference or adopt a similar definition of physical damage. *See* RCW § 9A.46.020(1).

Adding to the distinction between the statutory offenses, "malice" and "maliciously" are defined as "import[ing] an evil intent, wish, or design to vex, annoy, or injure another person," and "[m]alice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a willful disregard of social duty." RCW 9A.04.110(12). A threat in violation of RCW § 9A.46.020 is not limited to acts that "vex" or "annoy . . . another person." *Id.* Instead, a conviction under RCW § 9A.46.020 requires a "statement . . . that . . . would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another person." *Hosier*, 103 P.3d at 224 (citation, alteration, and internal quotation marks omitted). In sum, malicious mischief and harassment are distinct statutory offenses. *See, e.g.*, *State v. Gutsch*, 117 Wash. App. 1078, at *3-*4 (2003) (unpublished) (vacating second degree malicious mischief conviction while affirming harassment conviction).

We conclude that, based on the true threat requirement and definition of "threat" under Washington law, threats to cause "physical damage" to property sufficiently meet the standard for threatened use of physical force against property under 18 U.S.C. § 16(a). Although Amici contend that RCW § 9A.46.020(1)(a)(ii) may be violated based on threats to use graffiti, Amici do not cite to any Washington cases adopting such an expansive application of RCW

§ 9A.46.020(1)(a)(ii).    Even assuming that Amici's *de minimis* property damage argument is properly before us,[7] it appears that spray painting property is charged under Washington's malicious mischief statutes.    *See State v. J.A.V.*, 501 P.3d 159, 161, 163-64 (Wash. Ct. App. 2021) (delineating, in a case in which the defendant was charged with spray painting a tunnel, that "RCW § 9A.48.090 outlaws malicious mischief in the third degree" if an individual "[w]rites, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person unless the person has obtained the express permission of the owner or operator of the property, under circumstances not amounting to malicious mischief in the first or second degree.") (citation omitted) (emphasis omitted).    Moreover, harassment based on threats of physical damage to property has been criminalized in RCW § 9A.46.020    since    at    least    1985,    *see*    RCW § 9A.46.020(1)(a)(ii)(1985), yet Amici "provide no citation to any court proceedings reflecting charges or convictions" under RCW § 9A.46.020(1)(a)(ii) based on graffiti or other *de minimis* property damage.  *Diaz-Rodriguez v. Garland*, 55 F.4th 697, 711 (9th Cir. 2022) (en banc) (citation omitted).

Our decision that Rodriguez-Hernandez's conviction was for a crime of violence is not inconsistent with *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019) or *United States v. Landeros-Gonzales*, 262 F.3d 424 (5th Cir. 2001).

---

[7] "An amicus curiae generally cannot raise new arguments on appeal, and arguments not raised by a party in an opening brief are waived. . . ." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) (citations omitted).

In *Bowen*, the Tenth Circuit held that the defendant's convictions for witness retaliation in violation of 18 U.S.C. § 1513(b)(2) were not crimes of violence.  *See* 936 F.3d at 1101. The Tenth Circuit explained that "[t]he Supreme Court has held that the term 'physical force' requires more than offensive touching; it means 'violent force—that is, force capable of causing physical pain or injury to another person.'" *Id.* (citations and emphasis omitted).  The Tenth Circuit opined that "property crimes of violence . . . are those that require violent force, not merely the force required to damage property."  *Id.* at 1103-04 (emphasis omitted). Critically, the defendant in *Bowen* provided precisely what is missing from the present appeal—a citation to a case in which a defendant was actually convicted under the challenged statute "for spray-painting a witness's car." 936 F.3d at 1104.  The government did not "argue otherwise." *Id.*  On these facts, the Tenth Circuit "easily conclude[d] that the act of spray-painting another's car d[id] not entail the use of violent force."  *Id.* (citations omitted).

*Landeros-Gonzales* is also distinguishable.  In that case, the Fifth Circuit considered whether the defendant's conviction for criminal mischief in violation of Texas law was for a crime of violence under 18 U.S.C. § 16(b), *i.e.*, an offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  262 F.3d at 426 (citation omitted).   Notably, the Texas statute criminalizing criminal mischief "provide[d] that a person commits [the] offense if he intentionally (1) damages or destroys another's property, (2) tampers with property in such a way as to cause inconvenience to the owner or to some third person, or (3) makes markings on another's property."   *Id.* (citation and internal quotation marks

omitted). The Fifth Circuit emphasized that "it [was] clear that [the defendant] pleaded guilty to subsection (3) of the statute," and that "the relevant offense [was] the intentional marking of another's property with inscriptions, slogans, drawings, or paintings." *Id.* (internal quotation marks omitted).

The Fifth Circuit held that the offense was not a crime of violence because there was not "a substantial risk that a vandal will use destructive or violent force in the course of unlawfully making marks . . . on another's property." *Id.* at 427. *Landeros-Gonzales* is inapposite because the Texas statute, unlike RCW § 9A.46.020, explicitly criminalized conduct that did not involve use of physical force. *See id.* at 426.

In *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), *as amended*, the defendant maintained that his conviction for Hobbs Act robbery was not a crime of violence because "a perpetrator could rob a victim by putting him in fear of injury to his property through non-forceful means. He offer[ed] hypotheticals such as threatening to throw paint on the victim's house, to spray paint his car, or, most colorfully, to pour chocolate syrup on his passport." *Id.* at 57 (citation, alteration, and internal quotation marks omitted). The Second Circuit observed that "the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy." *Id.* at 56 (citation omitted).

We agree with the reasoning of the Second Circuit and conclude that there is not a "realistic probability," as opposed to "a theoretical possibility," that Washington "would apply its statute to conduct that falls outside" the scope of 18 U.S.C. § 16(a). *Lopez-Aguilar*, 948 F.3d at 1147 (citation omitted). Rodriguez-Hernandez "has not identified

any case holding that" a conviction under RCW § 9A.46.020(1) "is not a crime of violence" under 18 U.S.C. § 16(a), and "[t]o the extent one could devise obscure hypotheticals suggesting that it might be theoretically possible to carry out the completed offense . . . without the attempted use of force, that legal imagination cannot carry the day." *United States v. Linehan*, 56 F.4th 693, 704 (9th Cir. 2022) (citations and internal quotation marks omitted).

Because Rodriguez-Hernandez was convicted of a crime of violence, he was ineligible for cancellation of removal or asylum. *See Valdez*, 28 F.4th at 78; *see also Flores-Vega v. Barr*, 932 F.3d 878, 884 (9th Cir. 2019). Accordingly, substantial evidence supports denial of those applications. *See Flores-Vega*, 932 F.3d at 887-88.

### B. CAT Relief

Substantial evidence supports the denial of CAT relief. Rodriguez-Hernandez testified that his family received a threatening call warning that Rodriguez-Hernandez would be kidnapped when he visited Mexico, but Rodriguez-Hernandez was not able to identify who made the threats, his family did not make any payments, and Rodriguez-Hernandez did not plan on visiting Mexico. Rodriguez-Hernandez also confirmed that his family was never harmed, and that he feared "[j]ust the violence" if he was removed to Mexico. There is no indication that Rodriguez-Hernandez suffered from past torture, and "the record . . . does not *compel* the conclusion that [Rodriguez-Hernandez] faces any ongoing or particularized threat of torture." *Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 707 (9th Cir. 2022), *as amended* (emphasis in the original).

## IV.  CONCLUSION

Rodriguez-Hernandez's conviction for harassment in violation of RCW § 9A.46.020 is categorically for a crime of violence because, as interpreted by Washington courts, the statute requires the "threatened use of physical force against the person or property of another," and Rodriguez-Hernandez does not "show a realistic probability" that Washington would apply RCW § 9A.46.020(1) "to de minimis contact rather than force *capable* of causing physical pain or injury." *Alvarez*, 60 F.4th at 558, 563 (citations and internal quotation marks omitted) (emphasis in the original).  As a result, the BIA properly held that Rodriguez-Hernandez was not "eligible for discretionary relief from removal." *Valdez*, 28 F.4th at 78; *see also Flores-Vega*, 932 F.3d at 884.

Substantial evidence supports the BIA's denial of CAT relief because Rodriguez-Hernandez did not establish that it was more likely than not that he would be tortured with the consent or acquiescence of a public official.  *See Tzompantzi-Salazar*, 32 F.4th at 707.

**PETITION FOR REVIEW DENIED.**